Filed 3/14/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| GEZEL SAHELI, | B283217 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC651265) |
| v. | |
| WHITE MEMORIAL MEDICAL CENTER et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Randolph M. Hammock, Judge.  Reversed.

Seyfarth Shaw LLP, Jeffrey A. Berman, Joan E. Smiles, Dana Peterson, and Kiran A. Seldon for Defendants and Appellants.

Fred J. Hiestand, as Amicus Curiae on behalf of Defendants and Appellants.

Fenton Law Group, LLP, Nicholas D. Jurkowitz and Alexandra de Rivera for Plaintiff and Respondent.

_____

White Memorial Medical Center (White Memorial) and Juan Barrio, M.D. (together, Defendants) challenge the denial in part of their petition to compel arbitration of claims brought against them by Gezel Saheli, M.D. Although the trial court ordered Saheli to arbitrate the majority of her claims, it refused to compel arbitration of her claims brought pursuant to Civil Code sections 51.7 (Ralph Act) and 52.1 (Bane Act).[1] The court reasoned that the parties' arbitration agreement failed to comply with special requirements for agreements to arbitrate such claims. Specifically, sections 51.7 and 52.1 prohibit the enforcement of agreements to arbitrate Ralph Act and Bane Act claims that are made as a condition of certain contracts or of providing or receiving goods or services. They also mandate that the party seeking to enforce an agreement to arbitrate such claims prove the other party knowingly and voluntarily agreed to arbitration. Defendants contend (1) the trial court erred in its interpretation of the parties' arbitration agreement and (2) the Ralph Act's and Bane Act's special requirements for arbitration agreements are preempted by the Federal Arbitration Act (FAA). We agree and reverse the trial court's order denying Defendants' petition to compel arbitration of Saheli's Ralph Act and Bane Act claims.

## FACTUAL AND PROCEDURAL BACKGROUND

*Complaint*

Saheli filed her initial complaint against Defendants on February 21, 2017. In the operative First Amended Complaint, Saheli alleges she is a native of Iran and completed medical training at Tehran University of Medical Sciences. After

---

[1] All further section references are to the Civil Code unless otherwise specified.

immigrating to the United States, she enrolled in a medical residency program at White Memorial. In July 2016, Saheli discovered and reported to White Memorial violations of the Health Insurance Portability and Accountability Act (HIPAA) by physicians who were sending confidential protected health information by unsecured and unauthorized means. Over the next few months, she also reported unsafe patient care and conditions. In September 2016, Saheli reported the violations to the Accreditation Council for Graduate Medical Education.

Saheli alleges that, in response to such reports, Barrio commenced a "campaign of retaliation, harassment, and intimidation" against her, which included yelling at her and threatening to terminate her. According to Saheli, a substantial motivating factor for the yelling was the fact that she is female. In addition, Saheli alleges Barrio made several slurs concerning her Iranian nationality as well as sexual remarks about her and another resident. On March 2, 2017, Saheli was placed on a paid leave of absence pending termination.

Based on these allegations, Saheli asserts nine causes of action against Defendants: (1) retaliation in violation of Health and Safety Code section 1278.5; (2) violation of the Ralph Act (§ 51.7); (3) violation of the Bane Act (§ 52.1); (4) sexual harassment (§ 51.9); (5) retaliatory wrongful termination (Lab. Code, § 1102.5); (6) wrongful termination in violation of fundamental public policy; (7) gender discrimination and harassment under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.); (8) national origin discrimination and harassment under the FEHA; and (9) retaliation under the FEHA.

3

*Petition to Compel Arbitration*

On April 3, 2017, Defendants filed a petition to compel Saheli to arbitrate all of her claims, relying on an arbitration agreement found in an employment/training agreement and employee handbook (Arbitration Agreement).[2] The Arbitration Agreement provides that it "shall be governed by the Federal Arbitration Act and the Arbitration Act of the state in which the Organization is located." It further provides that "[a]rbitration pursuant to this [Arbitration Agreement] shall be the exclusive means to address any arbitrable dispute, and the parties mutually waive their right to a trial before a judge or jury in federal or state court in favor of arbitration under this [Arbitration Agreement]. Except as stated herein, the rights of the parties under this [Arbitration Agreement] shall be the same as those available to them in a court of competent jurisdiction. The decision of the arbitrator shall be final and binding on all parties."

"Arbitrable claims" under the Arbitration Agreement are defined as "those claims . . . that arise out of, or are related to, (i) a claim of employment discrimination . . . ; (ii) a claim of

---

[2] On June 7, 2016, Saheli signed a document entitled "Post-Doctoral Training Agreement," which mandated that she challenge her termination and all other grievances using White Memorial's grievance and arbitration procedures as contained in its Employee Handbook. On June 16, 2016, Saheli signed an acknowledgement stating she received a copy of the Employee Handbook and was aware it contained the arbitration procedures. She further acknowledged she understood and agreed that she "shall submit all issues covered by the referenced Procedures to final and binding arbitration." In certain circumstances not relevant here, the Employee Agreement provides a "Fair Hearing Plan" as an alternative to arbitration.

4

wrongful or unlawful termination of employment, including claims of constructive discharge; (iii) a claim for wages or other compensation; (iv) a tort claim or any other claim in which punitive damages or emotional distress damages could be awarded that arose out of, or is related to, the employment relationship; (v) a claim that is related in any manner to the claims described in (i) through (iv) of this paragraph, whether based on a statu[t]e, public policy, or otherwise." However, per the Arbitration Agreement's "carve-out" provision, "[c]laims for unemployment compensation, claims under the National Labor Relations Act, claims under PAGA [Private Attorney General Act], claims for workers' compensation benefits, and any claim that is non-arbitrable under applicable state or federal law are not arbitrable under this [Arbitration Agreement]."

Saheli opposed Defendants' petition, arguing the Arbitration Agreement was unenforceable with respect to her Ralph Act and Bane Act claims because it failed to comply with certain requirements for arbitration agreements mandated by those acts. Defendants countered that such requirements are preempted by the FAA.

The trial court granted the petition in part and compelled Saheli to arbitrate all her claims except those under the Ralph Act and Bane Act. The court found that, per the terms of the Arbitration Agreement, the parties agreed not to arbitrate claims that are not arbitrable under California law. It further determined that, pursuant to sections 51.7 and 52.1, the waiver of any forum or procedure under the Ralph Act and Bane Act is unenforceable unless expressly not made as a condition of entering into a contract for services. Because Defendants failed to show the parties expressly agreed the Arbitration Agreement

5

was not a condition of entering into a contract for services, the court concluded the agreement is unenforceable with respect to the Ralph Act and Bane Act claims. The trial court declined to consider whether these requirements are preempted by the FAA. Although not asserted as a defense by Saheli, the court proceeded to find the Arbitration Agreement is not unconscionable. It then compelled arbitration of Saheli's non-Ralph Act and -Bane Act claims.

Defendants appealed.

## STANDARD OF REVIEW

Where, as here, the issues presented by a petition to compel arbitration involve only the interpretation of an arbitration agreement, and there are no factual disputes concerning the language of the agreement or its formation, a reviewing court determines the scope and enforceability of the agreement de novo. (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 684; *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1468–1469; *Carlson v. Home Team Pest Defense, Inc.* (2015) 239 Cal.App.4th 619, 630.) Preemption is a question of law subject to de novo review. (*Choate v. Celite Corp.* (2013) 215 Cal.App.4th 1460, 1468–1469.)

## DISCUSSION

I. **The Parties Did Not Incorporate Preempted State Law into the Arbitration Agreement**

Defendants assert the trial court erred in implicitly interpreting the Arbitration Agreement as incorporating state law that is preempted by federal law. We agree.

The FAA[3] "requires courts to enforce privately negotiated

---

[3] Saheli does not dispute that the Arbitration Agreement is governed by the FAA.

6

agreements to arbitrate, like other contracts, in accordance with their terms." (*Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 478 (*Volt*).) "Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, [citation], so too may they specify by contract the rules under which that arbitration will be conducted." (*Ibid*.) Under these principles, the parties "might choose to have portions of their contract governed by the law of Tibet, the law of pre-revolutionary Russia, or (as is relevant here) the law of California" irrespective of that law's preemption by the FAA. (*DIRECTV, Inc. v. Imburgia* (2015) 136 S.Ct. 463, 468 (*Imburgia*); see *Best Interiors, Inc. v. Millie & Severson, Inc.* (2008) 161 Cal.App.4th 1320, 1326 ["even if the FAA applies . . . the parties may agree that California law governs their agreement to arbitrate"].)

Here, the Arbitration Agreement provides that the parties agree not to arbitrate claims that are not arbitrable under "applicable state . . . law." In other words, a claim is arbitrable under the Arbitration Agreement only if it is arbitrate under "applicable state . . . law." The parties, however, disagree as to the meaning of the phrase "applicable state . . . law." Defendants assert the phrase essentially means "applicable state law only to the extent it is not preempted by federal law," whereas Saheli implies that the phrase means "applicable state law notwithstanding any preemptive effect of federal law."[4]

---

[4]     Defendants additionally assert that, regardless of the preemption issue, the Arbitration Agreement does not mandate compliance with requirements for arbitration agreements found

If Saheli's interpretation is correct, the arbitrability of her Ralph Act and Bane Act claims would turn on whether the Arbitration Agreement complies with certain requirements found in those acts. If Defendants' interpretation is correct, the question of arbitrability would additionally turn on whether those requirements are preempted by federal law. If preempted, such requirements would not be incorporated into the Arbitration Agreement, and it would be irrelevant whether the Arbitration Agreement complies with them.[5]

Generally, when faced with the task of determining the meaning of contractual language, we apply well-established rules of contract interpretation. The California Supreme Court summarized such rules in *TRB Investments, Inc. v. Fireman's*

---

in the Ralph Act and Bane Act. They contend the fact that the Arbitration Agreement's "carve-out" excludes from arbitration claims for unemployment compensation, claims under the National Labor Relations Act, and claims for workers' compensation benefits, indicates that the phrase "any claim that is non-arbitrable under applicable state . . . law" refers only to claims that are subject to adjudication by administrative bodies and are not the proper subject of arbitration. Defendants, however, wholly ignore the additional carve-out for PAGA claims. PAGA claims are not subject to adjudication by administrative bodies. (See Lab. Code, § 2699, subd. (a) [under PAGA, an aggrieved employee may recover civil penalties through a civil action].) Moreover, although PAGA claims may not be the subject of pre-dispute arbitration agreements, an individual may agree to arbitrate such claims after a dispute has arisen. (*Julian v. Glenair, Inc.* (2017) 17 Cal.App.5th 853, 870.)

[5]     The trial court implicitly agreed with Saheli's interpretation when it declined to consider the issue of FAA preemption.

8

*Fund Ins. Co.* (2006) 40 Cal.4th 19: " ' "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties. 'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.*, § 1639.) The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" (*id.*, § 1644), controls judicial interpretation. (*Id.*, § 1638.)' [Citations.] A [contract] provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. [Citation.] But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." [Citation.]' " (*TRB Investments, Inc. v. Fireman's Fund Ins. Co, supra,* at p. 27.) The United States Supreme Court has cautioned that we may not apply such rules in a way that "does not place arbitration contracts 'on equal footing with all other contracts,' [citation]." (*Imburgia, supra*, 136 S.Ct. at p. 471.)

In *Imburgia, supra*, 136 S.Ct. 463, the United States Supreme Court held that language very similar to that now before us unambiguously excluded state law preempted by the FAA, and a contrary interpretation would itself be preempted by the FAA. In that case, the plaintiffs entered into service agreements with DIRECTV that contained arbitration agreements and waivers of class arbitration. (*Id.* at p. 466.) The agreements provided that if the "law of your state" makes

9

waivers of class arbitration unenforceable, the entire arbitration provision is unenforceable.  At the time the parties entered into the agreements, California law would have made the class arbitration waivers unenforceable under what is referred to as the *Discover Bank* rule.  (See *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 162–163.)

In 2008, the plaintiffs brought an action against DIRECTV in California state court.  (*Imburgia, supra*, 136 S.Ct. at p. 466.)  DIRECTV did not attempt to compel arbitration, presumably because the *Discover Bank* rule would have rendered the arbitration agreements unenforceable.  While the action was pending, the United States Supreme Court decided *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333 (*Concepcion*), which concluded the FAA preempts the *Discover Bank* rule.  In effect, this meant class arbitration waivers were now enforceable if contained in agreements governed by the FAA.  Sometime thereafter, DIRECTV moved to compel arbitration of the plaintiffs' claims.  (*Imburgia, supra*, at p. 466.)

Despite *Concepcion*'s invalidation of the *Discover Bank* rule, a California Court of Appeal denied DIRECTV's motion to compel arbitration.  The court determined the phrase "law of your state" contained in the service contracts referred to California law notwithstanding its preemption by the FAA.  The court reasoned that the phrase was ambiguous and should therefore be construed against the drafter, DIRECTV.  (*Id*. at p. 467.)  Based on this interpretation, the court concluded the arbitration agreements remained unenforceable.

The United States Supreme Court reversed.  (*Imburgia, supra*, 136 S.Ct. at p. 471.)  It held that, because the Court of Appeal employed principles and reasoning not applicable to

10

contracts generally, its "interpretation of the phrase 'law of your state' does not place arbitration contracts 'on equal footing with all other contracts,' [citation]. For that reason, it does not give 'due regard . . . to the federal policy favoring arbitration.' [Citation.] Thus, the Court of Appeal's interpretation is pre-empted by the Federal Arbitration Act. [Citation.]" (*Ibid*.)[6]

In reaching this decision, the Supreme Court detailed numerous ways in which the Court of Appeal's interpretation of the phrase "law of your state" was inconsistent with California law. It began by noting that California courts would normally find the phrase to be unambiguous: "Absent any indication in the contract that this language is meant to refer to *invalid* state law, it presumably takes its ordinary meaning: *valid* state law. Indeed, neither the parties nor the dissent refer us to any contract case from California or from any other State that interprets similar language to refer to state laws authoritatively held to be invalid." (*Imburgia, supra*, 136 S.Ct. at p. 469.) Moreover, under California's general contract principles, "references to California law incorporate the California Legislature's power to change the law retroactively." (*Ibid*.) The high court further criticized the Court of Appeal for its failure to provide any reasoning or principles to suggest it would reach the same interpretation in a non-arbitration context, its

---

[6] The Supreme Court acknowledged that, "when DIRECTV drafted the contract, the parties likely believed that the words 'law of your state' included California law that then made class-arbitration waivers unenforceable." (*Imburgia, supra*, 136 S.Ct. at pp. 468–469.) Nonetheless, the high court noted the relevant question before it was whether "at the time the Court of Appeal made its decision . . . the 'law of your state' included *invalid* California law." (*Id*. at p. 469.)

11

use of language focused solely on arbitration, and its view that state law retains independent force even after being invalidated. (*Id*. at pp. 469–470.)

We perceive no meaningful difference between the phrases " 'law of your state' " and " 'applicable state . . . law' " that would lead us to interpret the latter differently than the United States Supreme Court interpreted the former. Like the phrase " 'law of your state,' " the phrase "applicable state . . . law" is not ambiguous and its ordinary meaning refers only to valid state law. (See *Imburgia, supra*, 136 S.Ct. at p. 469.) Saheli has not provided any reasoning or general principles of contract interpretation that would lead to a different interpretation.[7] Nor has she pointed us to any cases in which courts have interpreted similar language in the manner she suggests. Accordingly, we interpret the phrase "applicable state . . . law" to encompass only California law that is not preempted by the FAA. (§ 1638 [contractual language that is clear and explicit governs].)

Saheli suggests that *Imburgia* is distinguishable because there, the relevant restriction on arbitration had been declared preempted prior to DIRECTV's attempt to compel arbitration. Here, in contrast, there had been no judicial declaration that the relevant portions of the Ralph Act and Bane Act are preempted by the FAA when Defendants petitioned the trial court to compel arbitration.

---

[7] In fact, Saheli simply assumes, without providing or applying any reasoning or principles of contract interpretation, that the phrase "applicable state . . . law" includes California law that is preempted by the FAA.

We do not find this distinction meaningful. In interpreting the phrase "applicable state . . . law," we are not concerned with the parties' or the trial court's understanding of the state of California law when Defendants first attempted to compel arbitration.[8] Nor, for that matter, are we concerned with the parties' understanding of the state of California law when they entered into the Arbitration Agreement. (See *Imburgia, supra*, 136 S.Ct. at pp. 468–469 [disregarding fact that parties would have understood *Discover Bank* rule to be valid law when they entered into the arbitration agreement].) Instead, we are concerned only with the meaning of the phrase "applicable state . . . law" as understood by the parties when they entered into the Arbitration Agreement. (§ 1636 [a "contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting"].) As we discussed, the ordinary meaning of the phrase does not encompass preempted state law. The supposed distinction between *Imburgia* and the present case does not warrant a contrary interpretation.

II. **The Ralph Act and Bane Act are Preempted by the FAA to the Extent They Condition the Enforceability of Arbitration Agreements on Compliance with Special Requirements Not Applicable to Contracts Generally**

Given our interpretation of the phrase "applicable state . . . law," the Arbitration Agreement's failure to comply with

---

[8] We also note that a " 'judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.' [Citations.]" (*McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 474.)

13

state law that is preempted by federal law does not provide a basis for the trial court to deny Defendants' petition to compel arbitration. Here, the trial court denied in part Defendants' petition to compel arbitration after determining the Arbitration Agreement failed to comply with certain requirements found in the Ralph Act and Bane Act. Accordingly, to determine if the trial court erred, we must decide whether those requirements are preempted by the FAA. We find that they are preempted, and the trial court erroneously denied the petition to compel arbitration of these claims.

### A. The Ralph Act and Bane Act

"The Legislature's focused effort to combat discriminatory and pernicious conduct often referred to as hate crimes began with the 1976 enactment of Civil Code section 51.7, commonly referred to as the 'Ralph Civil Rights Act' or the 'Ralph Act.' " (*Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 845, conc. opn. of Baxter, J. (*Venegas*).) The Ralph Act broadly provides that all persons "have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property" because of, among other things, the person's race, religion, national origin, sex, sexual orientation, or position in a labor dispute. (§ 51.7, subd. (a).) Persons who violate section 51.7 are liable for actual and exemplary damages, a civil penalty of $25,000, and attorney fees. (§ 52, subd. (b); *Venegas, supra*, at p. 842.)

A civil action for a violation of the Ralph Act may be brought by an aggrieved individual, the Attorney General, a district attorney, or a city attorney. (See § 52, subd. (c).) Regardless of who initiates the action, any civil penalties recovered shall be awarded to the person denied the right

14

provided by the Ralph Act.  (§ 52, subd. (b)(2).)  In addition to a civil action, an aggrieved individual may file a complaint with the Department of Fair Employment and Housing.  (§ 52, subd. (f).)

Ten years after enacting the Ralph Act, the Legislature enacted section 52.1—commonly referred to as the "Tom Bane Civil Rights Act" or "Bane Act"—which was "intended to supplement the Ralph Civil Rights Act as an additional legislative effort to deter violence."  (*Stamps v. Superior Court* (2006) 136 Cal.App.4th 1441, 1447.)  Section 52.1, subdivision (a), "provides that if a person interferes, or attempts to interfere, by threats, intimidation, or coercion, with the exercise or enjoyment of the constitutional or statutory rights of 'any individual or individuals,' the Attorney General, or any district or city attorney, may bring a civil action for equitable or injunctive relief.  Subdivision (b) allows '[a]ny individual' so interfered with to sue for damages [under section 52]."  (*Venegas, supra*, 32 Cal.4th at p. 841.)  In addition to damages, the individual may seek "injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct . . . ."  (§ 52.1, subd. (b).)  A violation of a temporary restraining order or temporary or permanent injunction issued under section 52.1 "may be punished either by prosecution under Section 422.77 of the Penal Code, or by a proceeding for contempt."  (§ 52.1, subd. (i).)

In 2014, the Legislature passed Assembly Bill No. 2617 (AB 2617), which limited the circumstances under which an individual may waive his or her rights under the Ralph Act and Bane Act, including the right to a judicial forum and procedures.  As amended, section 51.7 now provides that "[a]ny waiver of any

15

legal right, penalty, remedy, forum, or procedure for a violation of this section, including the right to file and pursue a civil action or complaint with, or otherwise notify, the Attorney General or any other public prosecutor, or law enforcement agency, the Department of Fair Employment and Housing, or any other governmental entity shall be knowing and voluntary, and in writing, and expressly not made as a condition of entering into a contract for goods or services or as a condition of providing or receiving goods and services." (§ 51.7, subd. (3).)

It further provides that "[a]ny waiver of any legal right, penalty, remedy, forum, or procedure for a violation of this section that is required as a condition of entering into a contract for goods or services shall be deemed involuntary, unconscionable, against public policy, and unenforceable." (§ 51.7, subd. (4).) In addition, any "person who seeks to enforce a waiver of any legal right, penalty, remedy, forum, or procedure for a violation of this section shall have the burden of proving that the waiver was knowing and voluntary and not made as a condition of the contract or of providing or receiving the goods or services." (§ 51.7, subd. (5).) AB 2617 amended the Bane Act to provide that the "rights, penalties, remedies, forums, and procedures of this section shall not be waived by contract except as provided in Section 51.7." (§ 52.1, subd. (l).)

## B. FAA Preemption

"The FAA was designed 'to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate,' [citation], and to place such agreements ' "upon the same footing as other contracts," ' [Citation.] While Congress was no doubt aware that the Act would encourage the expeditious resolution of disputes, its passage 'was motivated, first and foremost, by a congressional

16

desire to enforce agreements into which parties had entered.' [Citation.]" (*Volt, supra*, 489 U.S. at p. 478.)

Section 2 of the FAA "declares written provisions for arbitration 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' 9 U.S.C. § 2." (*Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 683 (*Doctor's Associates*).) By enacting section 2, " 'Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.' [Citation.]" (*Perry v. Thomas* (1987) 482 U.S. 483, 489 (*Perry*).) Section 2 "requires courts to place arbitration agreements 'on equal footing with all other contracts.' [Citations.]" (*Kindred Nursing Centers Ltd. Partnership v. Clark* (2017) 137 S.Ct. 1421, 1424 (*Kindred Nursing*).) It precludes "[s]tates from singling out arbitration provisions for suspect status," (*Doctor's Associates, supra*, 517 U.S. at p. 687), no matter how laudable the reasons for doing so, (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 384 (*Iskanian*)). In effect, section 2 of the FAA "preempts any state rule discriminating on its face against arbitration—for example, a 'law prohibit[ing] outright the arbitration of a particular type of claim.' [Citation.] And not only that: The [FAA] also displaces any rule that covertly accomplishes the same objective by disfavoring contracts that (oh so coincidentally) have the defining features of arbitration agreements." (*Kindred Nursing, supra*, 137 S.Ct. at p. 1426; see *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 924 (*Sanchez*) ["a state rule can be preempted not only when it facially discriminates against arbitration but also when it

17

disfavors arbitration as applied"].) Under section 2's saving clause, a state court may invalidate an arbitration agreement under generally applicable contract defenses, such as fraud, duress, or unconscionability, but not under a defense that is specific to arbitration agreements. (*Doctor's Associates, supra*, 517 U.S. at p. 687.)

### C. Analysis

The Ralph Act and Bane Act, as amended by AB 2617, unquestionably discriminate against arbitration by placing special restrictions on waivers of judicial forums and procedures in connection with claims brought under those acts. In effect, sections 51.7 and 52.1 deem an agreement to arbitrate such claims unenforceable unless the party seeking to enforce it proves (1) the other party knowingly and voluntarily agreed to arbitration, and (2) the arbitration agreement was not made a condition of a contract for goods or services or of providing or receiving goods or services. (§§ 51.7, subd. (b)(5); 52.1, subd. (l).) For the reasons we discuss, we conclude these restrictions are preempted by the FAA. Accordingly, the trial court's reliance on special requirements found in sections 51.7 and 52.1 to deny in part Defendants' petition to compel arbitration was in error.

Sections 51.7's and 52.1's special requirements for agreements to arbitrate Ralph Act and Bane Act claims do not apply to contracts generally. For example, the party seeking to enforce a contract generally need not prove the other party knowingly agreed to each term contained in a written contract. (*Randas v. YMCA of Metropolitan Los Angeles* (1993) 17 Cal.App.4th 158, 163 [" '[o]rdinarily, one who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms' "]; *Marin Storage & Trucking, Inc. v. Benco*

18

*Contracting & Engineering, Inc.* (2001) 89 Cal.App.4th 1042, 1049 [same].) Moreover, although mutual assent to a contract is essential, (§§ 1550, 1565), the party *opposing* enforcement of a contract generally has the burden to show his or her assent was involuntary. (Evid. Code, § 500 ["a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the . . . defense that he is asserting"]; *Townsend v. Wingler* (1952) 114 Cal.App.2d 64, 68 [party seeking to invalidate contract has burden of showing fraud, undue influence, or coercion]; *Fio Rito v. Fio Rito* (1961) 194 Cal.App.2d 311, 322 [defendant had burden of proving affirmative defense of duress].) It is also well-established that there is no general prohibition on contract terms that are required as a condition of a contract or of providing or receiving goods or services. (See, e.g., *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 819–820, fns. omitted ["a contract of adhesion is fully enforceable according to its terms [citations] unless certain other factors are present which, under established legal rules - legislative or judicial - operate to render it otherwise"]; *Lagatree v. Luce, Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105, 1127–1128 ["under both federal and state law, an employee's rights to a jury trial and a judicial forum can be validly waived by agreement, even where the waiver is required as a condition of employment"]; *Franco v. Arakelian Enterprises, Inc.* (2015) 234 Cal.App.4th 947, 956 ["waivers that are obtained as a condition of employment and that limit employees' ability to vindicate statutory employee protections[]are not categorically invalid or unenforceable"].) Sections 51.7's and 52.1's special requirements for waivers of judicial forums and procedures in connection with Ralph Act and Bane Act claims—and consequently their limitations on the

19

enforcement of arbitration agreements related to such claims—contravene these general rules of contracts. As such, the special requirements are preempted by the FAA. (*Doctor's Associates, supra*, 517 U.S. at p. 687 [state law is preempted if it "conditions the enforceability of arbitration agreements on compliance with a special . . . requirement not applicable to contracts generally"].)

The legislative history of AB 2617 confirms that the Ralph Act's and Bane Act's special requirements represent a hostility to arbitration and their purpose is primarily, if not exclusively, to discourage arbitration of Ralph Act and Bane Act claims.[9] A Senate Judiciary Committee analysis states that the amendments were needed because "courts are increasingly inclined to honor a signed waiver requiring the parties to submit to arbitration" Ralph Act and Bane Act claims, which, in practice, "seriously undermine[s]" the "spirit and intent of the state's civil rights law." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2617 (2013–2014 Reg. Sess.) June 23, 2014, pp. 3–4.) An Assembly Judiciary Committee report explains that the specific impetus for the bill was a "controversial" case, *D.C. v. Harvard-Westlake School* (2009) 176 Cal.App.4th 836 (*Harvard-Westlake*), in which a young man and his parents were compelled to arbitrate Ralph Act and Bane Act claims asserted against the young man's school. (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 2617 (2013–2014 Reg. Sess.) April 25, 2014,

_____

[9] The United States Supreme Court has suggested that the legislative or judicial intent behind a state law is relevant to the question of FAA preemption. (See *Perry, supra*, 482 U.S. at p. 493, fn. 9 [a state law is not preempted "*if that law arose* to govern issues concerning the validity, revocability, and enforceability of contracts generally" (italics added)]; *Doctor's Associates, supra*, 517 U.S. at pp. 686-687 [same].)

20

pp. 4–5.)  The arbitrator found in favor of the school on all claims and awarded attorney fees to the school in accordance with the parties' arbitration agreement.  (*Harvard-Westlake, supra*, at p. 847.)  The Court of Appeal reversed the award of fees, finding that an individual cannot waive the Ralph Act's and Bane Act's prohibition on a defendant's recovery of attorney fees.  (*Id*. at p. 866.)  The Assembly Report criticizes the *Harvard-Westlake* court for "failing to acknowledge that . . . requiring a party to allow a private arbitrator to decide hate crimes violations is, inherently, a waiver of rights and procedures provided by the statutes."  (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 2617 (2013–2014 Reg. Sess.) April 25, 2014, p. 7.)

The Assembly report proceeds to detail numerous supposed shortcomings of arbitration.  Under a section titled "Private Arbitration Is Essentially Unregulated And Highly Controversial When It Is Mandatory, Rather Than Voluntary," the report notes that "arbitrators are not regulated in any fashion; they need not be trained in the law, or even apply the law in a particular dispute, or render a decision consistent with the evidence presented to them.  What evidence is presented may, in fact, be incomplete because parties in arbitration have no legal right to obtain evidence in support of their claims or defenses, or the claims or defenses of the other party, contrary to the longstanding discovery practice in public courts. . . .  There is no need to justify [the arbitrator's] decision because the law and the evidence need not be followed and because there is no right for any party to appeal or obtain an independent review of the arbitrator's ruling unless the contract expressly so provides." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 2617 (2013–2014 Reg. Sess.) April 25, 2014, at pp. 5–6.)  The analysis

21

concludes that, in part due to these supposed shortcomings, private arbitration is "controversial . . . when it is imposed by more powerful parties without negotiation or the right to withhold consent to unfair terms." (*Id*. at p. 6.)

The above legislative history clearly shows the motivating force behind the enactment of AB 2617 was a belief that arbitration is inherently inferior to the courts for the adjudication of Ralph Act and Bane Act claims. In accordance with this dim view of arbitration, the Legislature placed special restrictions on waivers of judicial forums and procedures in connection with such claims. In practice, such restrictions discourage arbitration by invalidating otherwise valid arbitration agreements. It is precisely this sort of hostility to arbitration that the FAA prohibits.

Saheli suggests that sections 51.7's and 52.1's special requirements escape FAA preemption because they merely place restrictions on arbitration agreements and do not ban them outright.[10] We disagree. It is well-established that a law need not prohibit entirely arbitration agreements to be preempted by the FAA. (See, e.g., *Doctor's Associates, supra*, 517 U.S. 681 [FAA

---

[10] The legislative history suggests AB 2617 was drafted in this way in an attempt to avoid FAA preemption. Under a section titled "Is This Bill Carefully Crafted to Avoid Federal Pre-Emption Questions?," an Assembly report states, "this bill does not bar arbitration or other waiver agreements; it simply makes it unlawful to seek an unknowing and involuntary waiver of rights or procedures regarding abuse laws prior to a dispute arising. Proponents point out that there is no state or federal policy favoring involuntary waiver or arbitration agreements." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 2617 (2013–2014 Reg. Sess.) April 25, 2014, pp. 7–8.)

preempts Montana law mandating special notice requirements for arbitration agreements]; *Hedges v. Carrigan* (2004) 117 Cal.App.4th 578, 585 [FAA preempts font and point size, notification, and warning requirements for arbitration agreements in real estate transaction documents]; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 245 [FAA preempts requirements "such as proof of actual notice, meaningful reflection, signature by all parties, and/or a unilateral modification clause favoring the nondrafting party"]; *Scott v. Yoho* (2016) 248 Cal.App.4th 392 [FAA preempts Code of Civil Procedure section 1295's 30-day cancellation period for certain arbitration agreements related to medical disputes].)  Rather, it is sufficient, as is the case here, that the state law "conditions the enforceability of arbitration agreements on compliance with a special . . . requirement not applicable to contracts generally."  (*Doctor's Associates, supra*, 517 U.S. at p. 687.)

We also reject Saheli's assertion that the FAA "displaces" the Ralph Act and Bane Act, and therefore Defendants must show that "Congress intended to disrupt the statutory enforcement scheme" and "interfere with California's ability to curb discriminatory violence."  The premises of Saheli's argument are flawed.  The FAA does not displace the Ralph Act and Bane Act.  Nor does it interfere with their enforcement schemes or California's ability to curb discriminatory violence.  Instead, the FAA simply mandates that we treat agreements to arbitrate, including agreements to arbitrate Ralph Act and Bane Act claims, as we would other contracts.  The special requirements in sections 51.7 and 52.1 do not comport with this mandate, and are therefore preempted by the FAA.

1. *The Ralph Act's And Bane Act's Special Requirements Do Not Avoid Preemption by Virtue of their Application to the Waiver of Any Legal Right, Penalty, Remedy, Forum, or Procedure*

Saheli contends that sections 51.7's and 52.1's special requirements avoid preemption because they apply to the waiver of "any legal right, penalty, remedy, forum, or procedure" under the Ralph Act and Bane Act. According to Saheli, because the requirements are not targeted *solely* at arbitration agreements, they fall within section 2's saving clause as grounds that exist at law or in equity for the revocation of any contract. We disagree.

In *Southland Corp. v. Keating* (1984) 465 U.S. 1 (*Southland*), the United States Supreme Court rejected a similar argument to the one advanced by Saheli. In *Southland*, our nation's high court reversed a California Supreme Court decision holding that Corporations Code section 31512 prohibits arbitration of claims brought under the Franchise Investment Law. (See *Keating v. Superior Court* (1982) 31 Cal.3d 584, 596–597.) Corporations Code section 31512 provides, "Any condition, stipulation or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this law or any rule or order hereunder is void." After finding such language prohibits agreements to waive a judicial forum, the California Supreme Court determined such a prohibition was not preempted by the FAA. The court reasoned that "[s]uch exceptions to the general principle of arbitrability, like those expressed in California's Franchise Investment Law, do not reflect hostility toward arbitration, nor do they constitute an obstacle to the general enforcement of arbitration agreements in a manner consistent with federal law. Rather, such exceptions

24

are narrowly confined to rights and remedies created by state regulatory statutes, and represent a determination that the public interest is best served by maintaining access to the remedies which the Legislature has provided." (*Keating v. Superior Court, supra*, 31 Cal.3d 584 at p. 602.) The United States Supreme Court reversed, holding that, to the extent Corporations Code section 31512 prohibits arbitration of California Franchise Investment Law claims, it is preempted by the FAA. (*Southland, supra*, 465 U.S. at p. 10.)

In his dissent in part, Justice Stevens asserted a nearly identical argument to that advanced by Saheli in this case. Like Saheli, Justice Stevens argued the California Supreme Court's application of Corporations Code section 31512 to preclude arbitration was proper because it was based on such grounds as exist at law or in equity for the revocation of any contract. (*Southland, supra*, 465 U.S. at p. 20, dis. opn. of Stevens, J.) He explained, "A contract which is deemed void is surely revocable at law or in equity, and the California legislature has declared all conditions purporting to waive compliance with the protections of the Franchise Investment Law, including but not limited to arbitration provisions, void as a matter of public policy." (*Ibid*.)

The majority rejected Justice Stevens's argument, stating: "[T]he defense to arbitration found in the California Franchise Investment Law is not a ground that exists at law or in equity 'for the revocation of *any* contract' but merely a ground that exists for the revocation of arbitration provisions in contracts subject to the California Franchise Investment Law. Moreover, under this dissenting view, 'a state policy of providing special protection for franchisees . . . can be recognized without impairing the basic purposes of the federal statute.' [Citation.]

If we accepted this analysis, states could wholly eviscerate congressional intent to place arbitration agreements 'upon the same footing as other contracts,' [citation], simply by passing statutes such as the Franchise Investment Law. We have rejected this analysis because it is in conflict with the Arbitration Act and would permit states to override the declared policy requiring enforcement of arbitration agreements." (*Southland, supra*, 465 U.S. at pp. 16–17, fn. 11.)

*Sanchez, supra*, 61 Cal.4th 899 is also instructive. In *Sanchez,* the California Supreme Court held that the Consumers Legal Remedies Act's (CLRA) prohibition on the waiver of class actions is preempted by the FAA, despite the fact that the CLRA prohibits the waiver of numerous other statutory rights. (*Id*. at pp. 923–924; see §§ 1751 & 1780.) Our state's high court rejected the plaintiff's argument that enforcement of the anti-waiver provision "merely puts arbitration agreements on an equal footing with other contracts," reasoning that "a state rule can be preempted not only when it facially discriminates against arbitration but also when it disfavors arbitration as applied." (*Sanchez, supra*, 61 Cal.4th at p. 924, citing *Concepcion, supra*, 563 U.S. at pp. 341–342.)

Saheli's argument fails for the reasons articulated by the courts in *Southland* and *Sanchez*. Sections 51.7's and 52.1's special requirements for waivers of judicial forums or procedures are not "ground[s] that exist[] at law or in equity 'for the revocation of *any* contract' but merely [] ground[s] that exists for the revocation of arbitration provisions in contracts subject to" the Ralph Act and Bane Act. (*Southland, supra*, 465 U.S. at p. 16, fn. 11.) Although sections 51.7 and 52.1 place the same restrictions on waivers of various other statutory rights, the

26

statutes unquestionably disfavor arbitration as applied. (See *Sanchez, supra*, 61 Cal.4th at p. 924; *Concepcion, supra*, 563 U.S. at pp. 341–342.) Moreover, were we to accept Saheli's argument, the Legislature could circumvent the FAA by simply declaring a restriction on arbitration agreements equally applicable to the waiver of other rights under a particular statutory scheme. Given the ease with which the Legislature could avoid preemption in this manner, such a rule would, in practice, render ineffective section 2 of the FAA. (See *Southland, supra*, 465 U.S. at p. 16, fn. 11.)

2. *The Ralph Act's And Bane Act's Special Requirements Do Not Codify the Doctrine of Unconscionability*

Saheli suggests sections 51.7's and 52.1's special requirements fall within section 2's saving clause because they are a codification of the existing doctrine of unconscionability. We find no merit to this argument.

A court may refuse to enforce contracts or clauses in contracts that are unconscionable. (§ 1670.5, subd. (a).) " '[U]unconscionability has both a "procedural" and a "substantive" element,' the former focusing on ' "oppression" ' or ' "surprise" ' due to unequal bargaining power, the latter on ' "overly harsh" ' or ' "one-sided" ' results. [Citation.] 'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the

27

substantive terms themselves.' [Citations.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114, abrogated on other grounds by *Concepcion, supra*, 563 U.S. 333.)

Sections 51.7's and 52.1's special requirements for arbitration agreements are not simply a codification of the above-described principles. Although the special requirements potentially reflect elements of *procedural* unconscionability, they say nothing about *substantive* unconscionability. Thus, to find that sections 51.7's and 52.1's prohibitions on the enforcement of certain arbitration agreements codify existing rules of unconscionability would require us to declare all agreements to arbitrate Ralph Act and Bane Act claims, regardless of their actual terms, to be substantively unconscionable. Such a blanket rule is not permitted under the FAA.

In *Concepcion*, the United States Supreme Court cautioned that even when a court purports to apply a doctrine normally thought to be generally applicable, such as unconscionability, it may not " 'rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what . . . the state legislature cannot.' [Citation.]" (*Concepcion, supra*, 563 U.S. at p. 341.) According to our nation's high court, "[a]n obvious illustration of this point would be a case finding unconscionable or unenforceable as against public policy consumer arbitration agreements that fail to provide for judicially monitored discovery. . . . A court might reason that no

28

consumer would knowingly waive his right to full discovery, as this would enable companies to hide their wrongdoing.  Or the court might simply say that such agreements are exculpatory—restricting discovery would be of greater benefit to the company than the consumer, since the former is more likely to be sued than to sue.  [Citation.]  And, the reasoning would continue, because such a rule applies the general principle of unconscionability or public-policy disapproval of exculpatory agreements, it is applicable to 'any' contract and thus preserved by § 2 of the FAA.  In practice, of course, the rule would have a disproportionate impact on arbitration agreements . . . ." (*Id*. at pp. 341–342.)  As such, it would be preempted by the FAA.

A declaration that all agreements to arbitrate Ralph Act and Bane Act claims are per se substantively unconscionable would necessarily be premised on the uniqueness of an agreement to arbitrate.  Indeed, we could not reach such a conclusion without finding, for whatever reason, that it is inherently unfair to require a party to arbitrate Ralph Act and Bane Act claims.  Stated otherwise, Saheli essentially urges us to declare that arbitration, in the abstract and without regard to the specific procedures to which the parties agreed, is fundamentally incapable of fairly adjudicating an entire class of claims.  Such a rule would itself represent an improper hostility toward arbitration that would not be permitted under the FAA.

Even if the FAA permitted such a declaration, sections 51.7's and 52.1's special requirements would still be inconsistent with the existing doctrine of unconscionability.  First, by declaring unconscionable arbitration agreements that fail to comply with certain procedural requirements, sections 51.7 and 52.1 preclude courts from performing the sliding scale analysis

typically employed to determine whether a specific arbitration agreement is enforceable.  In addition, sections 51.7 and 52.1 alter the burden of proving unconscionability.  Generally, the burden is on the party opposing arbitration to show an arbitration agreement is unconscionable.  (*Sanchez, supra*, 61 Cal.4th at p. 911 ["[b]ecause unconscionability is a contract defense, the party asserting the defense bears the burden of proof"]; *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 ["a party opposing [a] petition [to arbitrate] bears the burden of proving by a preponderance of the evidence any fact necessary to its defense"].)  Sections 51.7 and 52.1, however, place the burden on the party seeking to enforce the arbitration agreement to show it was made knowingly and voluntarily and not as a condition of the contract or of providing or receiving goods or services.  (§ 51.7, subd. (b)(5).)  In effect, this shifts the burden to the party seeking enforcement to show that the arbitration agreement is not unconscionable.  In that way, sections 51.7 and 52.1 depart from the preexisting doctrine of unconscionability, and treat arbitration agreements differently from other types of contracts.  Such discriminatory treatment is not permitted under the FAA.

> 3. *An Agreement to Arbitrate Ralph Act and Bane Act Claims Does Not Require the Waiver of Substantive Rights or Remedies*

Finally, we reject Saheli's various arguments that sections 51.7's and 52.1's special requirements avoid preemption because they are consistent with general California law restricting the waiver of certain substantive rights and remedies.  The fundamental flaw with all of these arguments is that Saheli has failed to identify any substantive rights or remedies that are

30

necessarily waived simply by submitting a Ralph Act or Bane Act claim to arbitration.

In passing, and without any explanation or citation to the record or authority, Saheli asserts the Arbitration Agreement precludes injunctive relief. Contrary to this assertion, the Arbitration Agreement provides that the rights of the parties "shall be the same as those available to them in a court of competent jurisdiction." Further, it expressly empowers the arbitrator to award "such remedies as could be awarded by a court under the applicable substantive law, which may include injunctive or other equitable relief."

We also find no merit to concerns expressed in the legislative history of AB 2617 that an arbitrator could not provide meaningful, immediate relief—such as a temporary restraining order or preliminary injunction—to prevent the sort of abuse prohibited under the Ralph Act and Bane Act. (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 2617 (2013–2014 Reg. Sess.) April 25, 2014, p. 7.) Such concerns are addressed by Code of Civil Procedure section 1281.8, which provides that a party to an arbitration agreement may seek from a court a preliminary injunction or temporary restraining order if "the award to which the applicant may be entitled may be rendered ineffectual without provisional relief." (Code Civ. Proc., § 1281.8, subd. (b).)

Saheli's reliance on *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945 (prohibiting the waiver of certain statutory remedies under the CLRA, UCL, and FAL), and *Iskanian, supra*, 59 Cal.4th 348 (prohibiting the waiver of PAGA claims) is misplaced. Unlike the present controversy, those cases involved agreements to completely waive, in any forum, certain unwaivable substantive rights and remedies. Here, in contrast, the

31

Arbitration Agreement does not mandate the waiver of any substantive rights or remedies. Nor has Saheli identified any substantive rights or remedies necessarily waived by virtue of agreeing to arbitrate Ralph Act or Bane Act claims.

Although Courts of Appeal have relied on *Iskanian* to limit pre-dispute agreements to arbitrate PAGA claims, (see *Betancourt v. Prudential Overall Supply* (2017) 9 Cal.App.5th 439, 445–446; *Tanguilig v. Bloomingdale's, Inc.* (2016) 5 Cal.App.5th 665, 678), the reasoning employed by those courts is not applicable here. In limiting the enforceability of arbitration agreements related to PAGA claims, those courts relied on the fact that a PAGA action is not a "dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the *state*, which alleges directly or through its agents—either the [Labor and Workforce Development] Agency or aggrieved employees—that the employer has violated the Labor Code." (*Iskanian, supra*, 59 Cal.4th at pp. 386–387.) Consistent with the representative nature of such actions, prior to asserting a PAGA claim, an individual must give notice to the Labor and Workforce Development Agency (Agency), and may only pursue the claim if the Agency declines to investigate the alleged violation or issue a citation. (See Lab. Code, § 2699.3.) Accordingly, "[b]ecause a PAGA plaintiff, whether suing solely on behalf of himself or herself or also on behalf of other employees, acts as a proxy for the state only with the state's acquiescence (see § 2699.3) and seeks civil penalties largely payable to the state via a judgment that will be binding on the state, a PAGA claim cannot be ordered to arbitration without the *state's* consent." (*Tanguilig v. Bloomingdale's, Inc., supra*, 5 Cal.App.5th at p. 678.)

An action by an individual asserting Ralph Act and Bane Act claims is fundamentally different from a PAGA action. Although the government has the authority to pursue Ralph Act and Bane Act claims, an aggrieved individual asserting such claims does not act as a proxy for the state. Instead, the individual pursues the claims "in his or her own name and on his or her own behalf . . . ." (§ 52.1, subd. (b).) In addition, unlike PAGA, the Ralph Act and Bane Act do not require that an individual provide the state notice of her claims and the opportunity to pursue them in the first instance. We are also aware of no authority providing that the state is a real party in interest in individual Ralph Act or Bane Act claims. Given such fundamental differences between PAGA and the Ralph Act and Bane Act, *Iskanian* does not compel a finding that sections 51.7's and 52.1's restrictions on arbitration agreements avoid FAA preemption.

## DISPOSITION

The order denying in part Defendants' petition to compel arbitration is reversed. The parties are to bear their own costs on appeal.

## CERTIFIED FOR PUBLICATION

BIGELOW, P.J.

I concur:

HALL, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

33

### *Saheli v. White Memorial Medical et al. – B283217*


RUBIN, J. – Concurring:


I concur primarily under the compulsion of *DIRECTV, Inc. v. Imburgia* (2015) 136 S.Ct. 463 (*Imbrugia*). I agree with the majority that, under United States Supreme Court precedent, the reference in the arbitration agreement to "any claim that is non-arbitrable under applicable state or federal law" must be read to refer to state law that is not otherwise preempted by the FAA. Beyond that, I observe that our decision today continues the recent march of our nation's jurisprudence toward eliminating the right to a jury trial (or any trial) in a large number of civil cases by its ever-extending embrace of arbitration.[1]

There is to be sure a long history of appellate jurisprudence that identifies arbitration as a favored procedure. (See, e.g., *Burchell v. Marsh* (1854) 58 U.S. 344, 349 ["Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal. As a mode of settling disputes, it should receive every encouragement from courts of equity."]. The current accelerated progression of cases that have been judicially removed from the trial courts picked up speed primarily with the United States Supreme Court opinion in *AT&T Mobility LLC v. Concepcion* (2011) 131 S.Ct. 1740 (*AT&T Mobility*).

---

[1] The right to a jury trial in civil cases is guaranteed, with certain exceptions, in the Seventh Amendment of the United States Constitution and article 1, section 16 of our state Constitution. (See *Dimick v. Schiedt* (1935) 293 U.S. 474; *Shaw v. Superior Cour*t (2017) 2 Cal.5th 983, 993-994.)

There, the court addressed a contractual provision requiring arbitration of a relatively prosaic claim of whether sales tax could be charged for "free" cell phones.

In the six years following *AT&T Mobility,* the United States Supreme Court alone has issued opinion after opinion – 12 in total – either upholding arbitration agreements in the face of various challenges to their enforceability or directing lower courts to reconsider their previous decisions in light of *AT&T Mobility.* In addition to *Imbrugia,* these cases include *Kindred Nursing Centers Ltd. P'ship v. Clark* (2017) 137 S.Ct. 1421, 1426-1428 [state law prohibiting attorney-in-fact from waiving right of access to courts]; *American Express Co. v. Italian Colors Rest.* (2013) 133 S.Ct. 2304 [class action waiver in dispute between merchants and credit card issuer]; *Nitro-Lift Techs., L.L.C. v. Howard* (2012) 568 U.S. 17 [arbitrator must decide noncompetition clause]; *Marmet Health Care Ctr, Inc. v. Brown* (2012) 565 U.S. 530, 532-533 [state law prohibiting predispute agreements to arbitrate personal injury claims against nursing homes]; *CompuCredit Corp. v. Greenwood* (2012) 565 U.S. 95 [arbitration under the Credit Repair Organization Act].)[2]

---

[2]      Several of the 12 United States Supreme Court decisions were short orders that vacated lower court opinions and remanded the cases for consideration in light of *AT&T Mobility.* (See e.g. *Sonic-Calabasas A, Inc. v. Moreno* (2011) 565 U.S. 973 [state Labor Code grievance procedure]; *Affiliated Computer Servs. v. Fensterstock* (2011) 564 U.S. 1001 [consumer class action involving student loan payments]; *Cellco P'ship v. Litman* (2011) 563 U.S. 971 [consumer class action against telephone company]; *Branch Banking and Trust v. Gordon* (2011) 565 U.S. 1031 [bank arbitration agreement]; *Missouri Title Loans, Inc. v. Brewer* (2011) 563 U.S. 971 [class action waiver in car loan dispute]; *Sonic Auto., Inc. v. Watts* (2011) 563 U.S. 971 [class action waiver

But a road well-traveled does not necessarily make the trip satisfying if much is lost along the way.[3]

Today we find ourselves enforcing an employment agreement's mandatory arbitration clause for claims based on two California statutes, the Bane Act and the Ralph Act, that provide civil remedies for hate crimes, intimidation and violence. (Civ. Code, §§ 51.7, 52.)  The arbitral road that started with disputes over cell phone bills now includes hate crimes.

In a series of cases going back some 20 years, California courts have repeatedly decried the rising number of hate crimes and related conduct.[4]  Yet such conduct proliferates.  The most recent Bureau of Justice Statistics Report on hate crimes, states that "U.S. residents experienced an average of 250,000 hate crime victimizations each year from 2004 to 2015."  (Hate Crime Victimization, 2004-2015 <https://www.bjs.gov/content/pub/

---

in automobile purchase agreement]

[3]     With apologies to Robert Frost's "A Road Not Taken," an Australian poet, David Keig, once observed:
> "A road well-travelled does not the journey ease
> "Nor do well placed signposts aid our itineraries
> " . . . ."

("A Road Well Travelled," David Keig, <https://www.poemhunter. com/poem/a-road-well-travelled> (as of March 13, 2018).)

[4]     Writing in 1998, Justice Mosk said, "The Legislature enacted section 52.1 [the Bane Act] to stem a tide of hate crimes." (*Jones v. Kmart Corp.* (1998) 17 Cal.4th 329, 338.)  Over the years the Legislature has strengthened the Ralph Act and the Bane Act, sending "a message that the Legislature and the state view civil hate crimes cases as seriously or more seriously than any other tort."  (Sen Subcom. on Admin of Justice, Rep. on Sen Bill No. 98 (1991-1992 Reg. Sess.).)

pdf/hcv0415.pdf> (as of March 13, 2018).) Hate conduct takes its toll not only on individual victims but also on whole communities.[5]

I do not intend to suggest that the allegations in the present case, even if true, suggest conduct that even remotely resembles the vast majority of the hate crimes tabulated in the BJS statistics. They clearly do not, but that is beside the point. Both the Bane Act and the Ralph Act expressly represent part of the arsenal of legislative weapons against hate crimes, threats and intimidation, weapons that include enforcement of criminal laws, complaints to housing, employment and other agencies, and the prosecution of civil lawsuits. (See *Stamps v. Superior Court* (2006) 136 Cal.App.4th 1441, 1445-1448.) Our opinion today facilitates the elimination through arbitration clauses of civil

_____

[5] "Hate crimes remain a festering and horrifying problem in the United States. This form of domestic terrorism is designed to intimidate whole communities on the basis of personal and immutable characteristics – and can damage the very fabric of our society. Although there are laws on the books that help specifically deter hate crimes and protect their victims, significant gaps remain." (NAACP-Supported Hate Crimes Prevention Legislation Passes U.S. Senate (July 2009) <http://www.naacp.org/latest/naacp-supported-hate-crimes-prevention-legislation-passes-us-senate> (as of March 13, 2018).) Policy makers have recognized that hate conduct has significant adverse consequences for communities, not just individual victims. California's hate crimes legislation provides "protection against the special harms [hate crimes] inflict on individual victims, their communities and society at large." (*People v. MacKenzie* (1995) 34 Cal.App.4th 1256, 1272. See *In re Joshua H.* (1993) 13 Cal.App.4th 1734, 1748, fn. 9 [Hate crimes are "more serious than conventional crimes," and have "a more debilitating effect on the victim and on members in the victim's community than does conventional crime."].)

4

trials for Bane Act and Ralph Act violations without regard to whether the conduct is grievously violent or much less so.

The majority also finds that respondent's unconscionability argument is unpersuasive. Although I do not agree with the entirety of the majority's analysis, I concur because I do not believe respondent has sufficiently preserved the issue on appeal. I address both points briefly.

The one state law defense to the enforceability of an arbitration clause that seems to have withstood, for now, the present onslaught is unconscionability. (See *Kindred Nursing Centers Ltd. P'ship v. Clark* (2017) 137 S.Ct 1421, 1426.) Our state legislature went to great lengths in 2014 to craft amendments to the Ralph Act and Bane Act that would fit within traditional notions of unconscionability. Those amendments provide that a *predispute* agreement to waive *any rights or remedies* under the statutes imposed as a *mandatory* condition of entering into a contract for goods or services is deemed unconscionable. (Civ. Code, §§ 51.7, subd. (b)(4) & 52.1, subd. (i).) In my view, this statutory provision encompasses elements of both procedural and substantive unconscionability. Procedurally, a contract which requires the predispute waiver of rights or remedies as a condition of entering into a contract for goods or services may very well be adhesive and contain other elements of procedural unconscionability identified by our Supreme Court in *Armendariz v. Foundation Health Psychcare Servs.* (2000) 24 Cal.4th 83.

Substantively, the Legislature has determined that protections against hate crimes are sufficiently compelling, and implicate important public policies, such that their waiver is so unfair and one-sided as to be substantively unconscionable. This seems perfectly reasonable to me. The Ralph Act and Bane Act

5

provide remedies – to be pursued both by victimized individuals and by government agencies – to rid our state of hate crimes and related conduct.  For the Legislature to determine that it is "unconscionable, against public policy, and unenforceable" for one party to force a waiver of those rights and remedies on another as a condition of entering into a contract for goods or services seems to be well within its power.

The majority strikes down the Legislature's determination by relying on two lines of authority:  the latter holds that a blanket assumption that arbitration provisions are substantively unconscionable is impermissibly hostile to arbitration; the former holds that a statute hostile to arbitration cannot be saved by being dressed up in language also hostile to other procedures.  I have little abstract quarrel with either holding; I concur but with the concern that, in our desire to not be impermissibly hostile to arbitration, we are coming unnecessarily close to *elevating* arbitration above any other procedures and remedies to the derogation of our right to have disputes tried in civil courts.

The Ralph Act and Bane Act preclude mandatory, predispute waivers of "any legal right, penalty, remedy, forum, or procedure for violation" of the statutes.  (Civ. Code, § 51.7, subd. (b)(4).)  A Ralph Act violation justifies an award of exemplary damages, civil penalties, and attorney's fees.  (Civ. Code, § 52, subd. (b).)  Any person claiming to be aggrieved by such a violation may pursue a complaint with the Department of Fair Employment and Housing.  (Civ. Code, § 52, subd. (f).)  The Bane Act additionally provides for injunctive relief, and a violation of such an injunction may be criminally punished.  (Civ. Code, § 52.1, subds. (b), (i).)  Under the 2014 amendments, none of these remedies and procedures can be waived by a clause inserted as a mandatory condition in a contract for goods or

6

services. But only that part of the amendments which prevents such a waiver of the right to pursue a judicial remedy is here held unenforceable. In short, we are today holding that the California Legislature can rationally forbid an adhesive predispute waiver of exemplary damages, civil penalties, attorney fees, administrative complaints, and injunctive relief, but it cannot forbid an adhesive predispute waiver of the judicial remedy. The FAA prevents a state from treating arbitration more harshly than any other procedure; I do not believe it requires us to treat it more favorably than any other procedure.

I observe, however, that in opposition to respondents' petition to compel arbitration, appellant failed to develop an unconscionability defense. The bulk of her opposition to the petition was directed toward the argument that the arbitration provision in her employment contract excluded Ralph Act and Bane Act claims by its very terms, an argument unavailing under *Imburgia*. To the extent she argued unconscionability at all, she simply stated that the Ralph Act and Bane Act incorporated the common law doctrine of unconscionability, and suggested that the arbitration clause in this case was procedurally unconscionable because "by all indications, Plaintiff did, in fact, have no choice but to accept the terms of the arbitration clause in order to enter into the employment agreement with Defendants." She submitted no declaration setting forth the circumstances in which she had signed the agreement, or stating that why she believed it to be mandatory. Nor did she argue in any way why the particular arbitration clause in this case was substantively unconscionable. As the procedural unconscionability argument was unsupported by evidence and the substantive unconscionability point was devoid of either evidence or argument, unconscionability was not properly pursued before the

7

trial court and is not before us here.  This is therefore not the proper case to address the issue further.


RUBIN, J.