Filed 12/5/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| SYLVESTER LEWIS, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> SIMPLIFIED LABOR STAFFING SOLUTIONS, INC. et al., <br><br> Defendants and Appellants. | B312871 <br><br> (Los Angeles County <br> Super. Ct. No. 20STCV26893) |

APPEAL from an order of the Superior Court of Los Angeles County, Malcolm Mackey, Judge.  Reversed and remanded.

Hill Farrer & Burrill, E. Sean McLoughlin and Clayton J. Hix, for Defendants and Appellants.

Mahoney Law Group, Kevin Mahoney, Berkeh Alemzadeh, Raleigh Dixon; Ferguson Case Orr Paterson and John A. Hribar for Plaintiff and Respondent.

———————————————————

**INTRODUCTION**

This is an appeal of an order denying the motion of defendant and appellant Simplified Labor Staffing Solutions, Inc. (Simplified)[1] to compel arbitration of plaintiff and respondent Sylvia Lewis's[2] claims brought under the California Private Attorneys General Act of 2004, Labor Code section 2698 et seq. (PAGA).[3] Simplified's motion was based on Lewis's predispute agreement to arbitrate all claims arising from their employment relationship. The trial court understandably denied the motion based on a rule followed by numerous California Courts of Appeal that predispute agreements to arbitrate PAGA claims are unenforceable. We hold that this rule cannot survive the U.S. Supreme Court's recent decision in *Viking River Cruises, Inc. v. Moriana* (2022) ___U.S.___ [142 S.Ct. 1906] (*Viking River*). We further hold that the *scope* of the arbitration clause is to be determined by the arbitrator, in accordance with the arbitration agreement. Specifically, the parties' dispute about whether non-individual PAGA claims are governed by the arbitration

---

[1] Simplified's co-defendant Simplified Staffing Labor Solutions, LLC is also a party to this appeal. Additional co-defendants below, Maersk Inc., DAMCO USA Inc., and DAMCO Distributions Services Inc., are not parties to this appeal.

[2] The complaint alleges that, despite the caption, the plaintiff's first name is Sylvia. We refer to her by her surname, as is customary, and use the same pronouns that she does in her respondent's brief.

[3] Undesignated statutory references herein are to the Labor Code.

agreement, in the same way individual PAGA claims are, is an issue for the arbitrator to address.  Accordingly, we reverse.

## BACKGROUND[4]

Simplified is a multi-state temporary staffing services company.  It supplies labor and staffing to clients in California and elsewhere in the United States.  As a result, Simplified is engaged in and involved in interstate commerce within the meaning of the Federal Arbitration Act (FAA), 9 U.S.C. section 1 et seq.

Simplified hired Lewis in September 2019.  On or about her hire date, Lewis signed an arbitration agreement and class action waiver.  The agreement was made pursuant to the FAA and requires arbitration of all "claims that arise out of [her] employment relationship with [Simplified]," subject to limited exceptions not relevant here.  The agreement also states that, if any provision "is adjudged to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement."  Once hired, Simplified staffed Lewis with clients for whom Lewis acted as a materials handler responsible for loading and unloading freight.

In 2020, Lewis filed a complaint against Simplified, as well as an affiliate of Simplified's and Simplified's clients with whom she was staffed.  Lewis brought her claims pursuant to PAGA.  Lewis alleged a number of Labor Code violations, including failures to pay wages, provide meal and rest periods, maintain accurate payroll records, and reimburse business expenses.

---

[4]     We draw the background from the allegations of the first amended complaint, which we accept as true for purposes of this appeal, and the documents submitted in connection with the motion to compel arbitration.

Simplified moved to compel arbitration. The trial court denied the motion on the grounds that predispute agreements to arbitrate PAGA claims are not enforceable. Following the approach of several California Courts of Appeal, the trial court reasoned that, because the State of California is the real plaintiff in interest in a PAGA action (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 382 (*Iskanian*)), it is the consent of the State, and not of the named employee plaintiff, that is required to compel arbitration. Under the unique structure of PAGA, the reasoning goes, an employee can speak for the State only after it has become "aggrieved" under the statute, which can occur only after the dispute has arisen.[5] Following *Iskanian*, the trial court interpreted the FAA as inapplicable to disputes involving the State such that there could be no FAA preemption.

Simplified timely appealed. Its appeal is authorized by Code of Civil Procedure section 1294, subdivision (a).

While the appeal was pending, but after regular briefing was complete, the Supreme Court issued its decision in *Viking River*. In addition, before it filed its reply, Simplified settled PAGA claims brought against it in a separate action styled *Shackelford v. Simplified Labor Staffing Solutions, Inc.* (C.D.Cal. No. 2:20-cv-06846-AB-AFM) (the *Shackelford* Action). We

---

[5] Published decisions taking this approach include: *Herrera v. Doctors Medical Center of Modesto, Inc.* (2021) 67 Cal.App.5th 538, 549 (*Herrera*); *Collie v. The Icee Co.* (2020) 52 Cal.App.5th 477, 481–482 (*Collie*); *Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th 602, 622; *v. Glenair, Inc.* (2017) 17 Cal.App.5th 853, 872; *Betancourt v. Prudential Overall Supply* (2017) 9 Cal.App.5th 439, 449; *Tanguilig v. Bloomingdale's, Inc.* (2016) 5 Cal.App.5th 665, 677.

4

requested, and the parties submitted, supplemental briefing on the impact of these events on the resolution of this appeal.

## DISCUSSION

### I. Standard of Review

Where, as here, there are no disputed factual issues, we review de novo the trial court's decision on a petition to compel arbitration. (*Alvarez v. Altamed Health Services Corp.* (2021) 60 Cal.App.5th 572, 581.) Preemption is a question of law subject to de novo review. (*Saheli v. White Memorial Medical Center* (2018) 21 Cal.App.5th 308, 316.)

### II. PAGA

PAGA was enacted to remedy underenforcement of the Labor Code. (*Iskanian*, *supra*, 59 Cal.4th at p. 379.) The Legislature attributed this underenforcement to a lack of resources available to the government agencies responsible for enforcement. (*Ibid.*) Its solution was to outsource enforcement to private individuals affected by their employers' violations.

To accomplish this, PAGA allows "aggrieved employees" to act as "private attorneys general," but only after giving the Labor and Workforce Development Agency (LWDA) the opportunity to prosecute the alleged violations itself. (§§ 2699, subd. (c), 2699.3, subd. (a).) An "aggrieved employee" is an employee against whom at least one alleged Labor Code violation was committed. (§ 2699, subd. (a).)

To give the LWDA the opportunity to prosecute alleged violations, the aggrieved employee must send notice to the LWDA and the employer specifying such violations. (§ 2699.3, subd. (a)(1).) The aggrieved employee is automatically deputized to proceed with its civil suit if (i) the LWDA does not respond (*id.,* subd. (a)(2)(A)); (ii) the LDWA responds that it does not

5

intend to investigate (*ibid*.); or (iii) the LWDA notifies the employee of its intent to investigate but does not issue a citation within 120 days after its decision to investigate (*id*., subd (a)(2)(B)). So deputized, the aggrieved employee wields the power of the state to seek civil penalties for employers' Labor Code violations without any further involvement by the LWDA.

Notably, aggrieved employees are not limited to suing on violations committed against them. So long as they suffered *some* violation, they assume standing to recover for *any* violation committed by their employer. We refer to claims on account of violations suffered by the plaintiff employee as "individual claims" and those suffered only by the plaintiff's co-workers as "non-individual claims."

PAGA penalties are set at $100 for each aggrieved employee per pay period for the initial violation and $200 for each aggrieved employee per pay period for each subsequent violation. (§ 2699, subd. (f)(2).) Penalties recovered in a PAGA action are shared between the LWDA (75 percent) and aggrieved employees (25 percent). (§ 2699, subd. (i).) The successful PAGA plaintiff is also entitled to its attorney fees and costs. (§ 2699, subd. (g)(1).)

An aggrieved employee's right to recover for the universe of its employer's Labor Code violations substantially amplifies the risk employers face in a PAGA action. Predictably, then, employers have sought to limit their PAGA exposure by contract. The California Supreme Court addressed one approach to doing so in *Iskanian*, *supra*, 59 Cal.4th 348.

## A. *Iskanian*

The *Iskanian* court considered (a) whether predispute PAGA waivers are permissible under state law; and, if not

6

(b) whether the FAA preempts a state prohibition on PAGA waivers.

As to the first question, the court found that an employee cannot prospectively waive a PAGA claim. It reasoned that PAGA waivers would violate public policy and provide a mechanism for employers to exculpate themselves in contravention of Civil Code sections 1668 and 3515. (*Iskanian, supra*, 59 Cal.4th at p. 383.)

In concluding that the particular waiver at issue was unenforceable, the *Iskanian* court considered and rejected the employer's argument that it was not a true waiver because it preserved the employee's right to assert individual PAGA claims in arbitration and barred only non-individual claims. The court held that any waiver of non-individual claims (one of two classes of claims the *Iskanian* court referred to as "representative") is unenforceable because requiring separate actions to seek redress for the same violation would undermine PAGA's purposes of punishing and deterring Labor Code violations. (*Iskanian, supra*, 59 Cal.4th at pp. 383–384.) Appellate courts applying *Iskanian* interpreted this aspect of its analysis as prohibiting splitting PAGA claims into individual and non-individual components to permit arbitration of the individual claims. (See *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 88 [citing cases].)

The *Iskanian* court next turned to the question of whether the FAA preempts its rule against PAGA waivers, and found no preemption. It determined that barring PAGA waivers posed no " 'obstacle to the accomplishment of the FAA's objectives' " because "the FAA aims to ensure an efficient forum for the resolution of *private* disputes, whereas a PAGA action is a

dispute between an employer and the state . . . ." (*Iskanian*, *supra*, 59 Cal.4th at p. 384.) It elaborated that "a PAGA claim lies outside of the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between the employer and the *state*, which alleges directly or through its agents—either the [LDWA] or aggrieved employees—that the employer has violated the Labor Code. . . . [In a PAGA action], the state is the real party in interest." (*Id.* at pp. 386–387.)

## B. California Appellate Courts Interpret *Iskanian* as Barring Predispute Agreements to Arbitrate PAGA Claims

Seizing on *Iskanian*'s holding that the State is the real plaintiff in interest, California appellate courts have refused to enforce predispute agreements to arbitrate PAGA claims. As already noted, they reason that an employee is not an "aggrieved employee" under PAGA before a dispute arises and, as such, cannot act as an agent for the State at that time. (See, e.g., *Herrera*, *supra*, 67 Cal.App.5th at p. 550, fn. 3; *Collie*, *supra*, 52 Cal.App.5th at pp. 481–482.) Under this reasoning, only once an employee is aggrieved and deputized as the State's agent under PAGA can the employee's consent be imputed to the State. We refer to this rule as the "State-must-consent rule."

However, the rule does not require direct consent by the State. Rather, the rule permits an aggrieved employee, having been deputized by the State by operation of law, to elect to arbitrate PAGA claims without consultation with the State. This is clear from the disposition in *Iskanian*, where the court left it to the employer and employee to decide whether they would

agree to arbitrate the employee's PAGA claims. (See *Iskanian*, *supra*, 59 Cal.4th at p. 391.)

### C. *Viking River*

*Viking River* addressed our Supreme Court's holdings in *Iskanian* and its analysis bears directly on the issues presented in this case.

*Viking River* involved an "agreement to arbitrate any dispute arising out of [the plaintiff's] employment." (*Viking River*, *supra*, 142 S.Ct. at p. 1916.) The agreement further contained a waiver of the right to assert, among other things, a representative PAGA action (i.e., non-individual claims). To the extent this waiver was found invalid, the agreement provided that the PAGA action would proceed in court, but if any "portion" of the waiver was valid, it would be enforced in arbitration. (*Ibid.*) After her employment ended, the *Viking River* plaintiff sued in California under PAGA for one violation she suffered personally and for several other non-individual claims. (*Ibid.*) The employer moved to compel arbitration of the individual claim but was denied. Relying on *Iskanian,* Division Three of our court affirmed, holding that the PAGA waiver was unenforceable and that PAGA claims cannot be split into arbitrable individual claims, on the one hand, and non-arbitrable non-individual claims, on the other. The *Viking River* court reversed and remanded on FAA preemption grounds.

The preliminary issue underlying its analysis is addressed only in a footnote but is critically important: contrary to one of *Iskanian*'s holdings, the *Viking River* court found the FAA *does* apply to PAGA claims. (*Viking River*, *supra*, 142 S.Ct. at p. 1919, fn. 4.) To reach this conclusion, the *Viking River* court specifically rejected *Iskanian*'s characterization of a PAGA action

9

as " 'not a dispute between an employer and an employee arising out of their contractual relationship,' but 'a dispute between an employer and the state.' " (*Viking River*, at p. 1919, fn. 4, quoting *Iskanian*, *supra*, 59 Cal.4th at p. 387.) Given its conclusion that the FAA applies, the court went on to consider whether the FAA preempted *Iskanian*'s outright prohibition on PAGA waivers.

First, it rejected the argument that precedents in the class action context finding preemption of forced class arbitration compelled the same result for PAGA actions. It explained that, in contrast to a class representative, a PAGA plaintiff represents only a single principal and not a multitude of absent class members. (*Viking River*, *supra*, 142 S.Ct. at p. 1920.) As such, unlike class actions, PAGA actions do not present the problems of notice, due process, and adequacy of representation that require robust procedural safeguards above and beyond those envisioned by traditional arbitration. (*Id*. at p. 1921.) Thus, PAGA claims are susceptible to resolution through arbitration without conflicting with its "traditionally individualized form" and the corresponding efficiency that arbitration promises. (*Ibid*.)

It also rejected the argument that PAGA claims conflict with the objectives of arbitration because, instead of being a dispute between two principals, PAGA cases consist of one principal defending against an agent (the aggrieved employee) acting for an absent principal (the State). The court noted that it had never "suggested that single-agent, single-principal representative suits are inconsistent [with] the norm of bilateral arbitration as [the court's] precedents conceive of it." (*Viking River*, *supra*, 142 S.Ct. at p. 1921.)

In short, the *Viking River* court found that nothing in the fundamental character of PAGA claims conflicts with the parties'

10

right to choose arbitration for the resolution of their claims and to enjoy the FAA-guaranteed benefits of that choice. As such, it found no FAA preemption of *Iskanian*'s ban on PAGA waivers.

However, the *Viking River* court did find a conflict between the FAA and *Iskanian*'s prohibition on splitting individual claims from non-individual claims in an arbitration agreement. This prohibition, it explained, "unduly circumscribes the freedom of parties to determine 'the issues subject to arbitration' and the 'rules by which they will arbitrate' " by imposing on them an all or nothing choice: arbitrate both individual and non-individual claims or forego arbitration entirely. (*Viking River*, *supra*, 142 S.Ct. at p. 1923.) Were splitting allowed, parties might (as the *Viking River* parties did) prefer to resolve higher-stakes non-individual claims in a judicial forum where multilayered review is available to correct errors, but to arbitrate lower-stakes individual claims as to which convenience considerations may outweigh lack of meaningful review. (*Id.* at p. 1924.) Because *Iskanian*'s anti-splitting rule deprives parties of the right to choose those claims they wish to arbitrate, the Supreme Court concluded that it is preempted by the FAA. (*Viking River,* at p. 1924.)

Against this backdrop, we consider whether the trial court should have compelled arbitration of Lewis's claims against Simplified.

## III. *Viking River* Compels Reversal

In refusing to compel arbitration, the trial court relied only on the notion that the absence of state consent renders a predispute arbitration agreement unenforceable. As already noted, the State-must-consent rule flows from *Iskanian*'s premise that PAGA claims represent a dispute between the employer and

11

the state, rather than the employee, rendering the state the real party in interest. (*Iskanian*, *supra*, 59 Cal.4th at p. 386.) *Iskanian* relied on this premise only to conclude that PAGA claims are exempt from the FAA, stopping short of deeming them not arbitrable as a matter of law. (*Id.* at p. 384.) But California appellate courts extended the premise to bar enforcement of predispute arbitration agreements, reasoning that no plaintiff is an "aggrieved employee" predispute and therefore no predispute plaintiff has authority to bind the state as its agent under PAGA. (See fn. 5, *supra*.) These appellate courts largely sidestepped the question of FAA preemption based on *Iskanian*'s holding that the FAA does not apply to PAGA. (See, e.g., *Herrera*, *supra*, 67 Cal.App.5th at p. 550.)

*Viking River* explicitly rejected that PAGA claims are exempt from the FAA. We must therefore consider whether the FAA preempts the State-must-consent rule.[6] We conclude that, beyond preemption, *Viking River*'s reasoning destroys the foundation of the State-must-consent rule. But even if it did not, the rule would be preempted.

---

[6]     Even though the *Viking River* court did not directly consider the State-must-consent rule, its enforcement of the predispute arbitration agreement is a strong indication that it would find the rule is preempted. It would appear anomalous for us to find an arbitration agreement unenforceable based on a characteristic shared with an agreement just enforced by the Supreme Court. Nevertheless, consistent with the rule that cases are not authority for propositions not considered, we address preemption of the State-must-consent rule.

### A. The State-Must-Consent Rule Does Not Survive Viking River

#### 1. Since PAGA Actions Necessarily Involve Employer-Employee Disputes, the Private Agreement to Arbitrate Must Be Enforced

*Iskanian* deemed PAGA outside of the FAA's coverage by construing PAGA disputes as arising solely between the employer and the State. (*Iskanian, supra*, 59 Cal.4th at pp. 386–387.) *Viking River* rejected this interpretation, recognizing that PAGA actions necessarily involve a dispute between the employee and the employer (while simultaneously recognizing the State's interest, as well). (*Viking River, supra*, 142 S.Ct. at p. 1919, fn. 4 [PAGA claims may "in some sense *also* [be] a dispute between an employer and the State"] (italics added).)

Even though all PAGA claims are representative and belong to the State (*Iskanian, supra*, 59 Cal.4th at pp. 387, 388), it is the employee's personal interest in the litigation—redressing a Labor Code violation suffered at the hands of the employer— that is a necessary predicate for the action. (See *Viking River, supra*, 142 S.Ct. at p. 1919, fn. 4; § 2699, subd. (c).) Implicit in *Viking River*'s result is that, though the PAGA plaintiff may be an agent for the State as the real party in interest (the court assumed as much, *Viking River*, at p. 1914, fn. 2), she is also something more. (Cf. *Devlin v. Scardelletti* (2002) 536 U.S. 1, 10 ["The label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context"].) The Supreme Court is well aware "that a contract cannot bind a nonparty." (*EEOC v. Waffle House, Inc.* (2002) 534 U.S. 279,

13

294.) That the employee's predispute agreement to arbitrate was sufficient to compel enforcement necessarily reflects that the employee also enjoys the status of a principal in her own right in a PAGA action.

This status requires enforcement of an employee's predispute agreement to arbitrate PAGA claims. Congress's " 'preeminent concern . . . in passing [the FAA] was to enforce private agreements into which parties had entered.' " (*Perry v. Thomas* (1987) 482 U.S. 483, 490.) As a result, such agreements must be " 'rigorously enforced.' " (*Ibid.*) Where, as here, an employee agrees to arbitrate future disputes with her employer and she later brings such a dispute as a PAGA action, courts must hold her to her choice of forum for the resolution of her dispute.

## 2. A State Law Rule Disregarding the Employee's Predispute Choice Is Preempted

Having established that an employee's interest in a PAGA action is sufficient to support enforcement of the employee's agreement to arbitrate, an interpretation of state law preventing enforcement of that agreement or interfering with the objectives of arbitration is preempted by the FAA. (*Southland Corp. v. Keating* (1984) 465 U.S. 1, 16, fn. 10 ["the [FAA] preempts a state law that withdraws the power to enforce arbitration agreements"]; *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 343 [a state law rule that "stand[s] as an obstacle to the accomplishment of the FAA's objectives" is preempted].)

The State-must-consent rule does just that. The FAA is concerned specifically with enforcing predispute agreements to arbitrate. (9 U.S.C. § 2 ["a contract evidencing a transaction

14

involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"].) Permitting PAGA arbitration consent to occur only once an employee becomes aggrieved means consent can occur only after a dispute has arisen.  (See § 2699, subd. (c) [" 'aggrieved employee' means any person who was employed by the alleged violator and against whom one or more of the alleged violations *was committed*"] (italics added).)  The State-must-consent rule thereby prevents enforcement of predispute arbitration agreements in contravention of the FAA's guarantee that parties may agree to settle future disputes by arbitration.

That the rule is a purported application of general agency principles does not save it.  "[A] state rule can be preempted not only when it facially discriminates against arbitration but also when it disfavors arbitration as applied."  (*Sanchez v. Valencia Holding Co., LLC.* (2015) 61 Cal.4th 899, 924.)  It is one thing to generically refer to the employee as agent or proxy for the State in a PAGA action.  It is quite another to blindly apply agency rules without regard to the unique character of the relationship.

The relationship between the State and the PAGA plaintiff is defined exclusively by the PAGA statute.  The statute and the rights it creates are "unique."  (*Collie, supra*, 52 Cal.App.5th at p. 483.)  Unlike the typical agent, the PAGA plaintiff must have been personally affected by the same wrong that it complains about on behalf of its principal.  (§ 2699, subd. (c).)  As *Viking River* recognizes, this elevates her status to something more than a mere water carrier for the State's dispute.  And unlike a traditional principal, the State delegates enforcement to the

15

employee entirely and irrevocably.  Once the employee, by State inaction or express authorization, obtains the right to sue, the State defers completely to the employee in prosecuting PAGA claims.  It is the employee's burden to prove her claims and the employee's right to dismiss or settle them without further litigation.  Once commenced, the State has no right of intervention in a PAGA action.  (See *Magadia v. Wal-Mart Assocs.* (9th Cir. 2021) 999 F.3d 668, 677.)  Indeed, even *Iskanian* acknowledged that PAGA litigation proceeds "without government supervision."  (*Iskanian*, *supra*, 59 Cal.4th at pp. 389–390.)[7]

Moreover, concern over "binding" the state-as-principal to a predispute, pre-agency agreement is misplaced.  The State has the unqualified right to undertake prosecution of any Labor Code violation a prospective PAGA plaintiff seeks to bring.  (§ 2699, subd. (h).)  Should it elect to do so, the LWDA is free to proceed in any manner and forum it is authorized to by statute, without regard to any agreement by the prospective plaintiff to arbitrate.  (See *EEOC v. Waffle House, Inc.*, *supra,* 534 U.S. at p. 294 [EEOC not bound to arbitrate enforcement action vindicating rights of employee who agreed to arbitrate all claims].)  The State's unfettered right to proceed outside of arbitration by pursuing

---

[7]     PAGA was since amended to require the aggrieved employee to provide notice to the LWDA of certain events in PAGA actions filed on or after July 1, 2016, including notices of proposed settlements when submitted for court approval. (§ 2699, subd. (*l*)(2).)  Nevertheless, the statute provides that "[t]he superior court shall review and approve any settlement of any civil action filed pursuant to [PAGA]," but contains no language giving the LWDA any veto right over a proposed settlement.  (*Ibid.*)

16

enforcement in its own name is incompatible with the notion that it is in any way "bound" by the employee's predispute agreement to arbitrate.

In short, to feign deference to the preferences of the state-as-principal under these circumstances is to ignore that, at the point that the employee has the right to sue, the State has manifested a lack of preference about how the litigation will proceed. Since the PAGA plaintiff is entitled to choose arbitration without consulting the State *after* the dispute arose (see *Iskanian*, *supra*, 59 Cal.4th at p. 391), disregarding her earlier choice simply because the State was *not yet* involved serves only one apparent purpose: to let the employee renege on her agreement.

In reaching our conclusion that the State-must-consent rule is preempted, we note the absence of disagreement from our Supreme Court or from Lewis. *Iskanian* did not hold that PAGA claims are inarbitrable as a matter of law. (See *Sakkab v. Luxottica Retail N. Am., Inc.* (9th Cir. 2015) 803 F.3d 425, 434 ["The California Supreme Court's decision in *Iskanian* expresses no preference regarding whether individual PAGA claims are litigated or arbitrated"].) Rather, it held that a waiver depriving a PAGA plaintiff of *any* forum was unenforceable. (*Ibid*.) Indeed, in his concurring opinion, Justice Chin expressed concern that the decision *could* be read to permit a blanket PAGA arbitration ban and rejected it: "Under the majority's view . . . , the state may, without constraint by the FAA, simply ban arbitration of PAGA claims and declare agreements to arbitrate such claims unenforceable. I do not subscribe to that view, for which the majority offers no case law support." (*Iskanian, supra,* 59 Cal.4th at p. 396 (conc. opn. of Chin, J.).)

For her part, Lewis answered Simplified's preemption arguments solely by reference to *Iskanian*'s blanket exemption of PAGA claims from the FAA. In her supplemental brief filed after *Viking River* rejected that exemption, Lewis did not argue the State-must-consent rule escaped preemption for other reasons. Instead, she conceded that she was bound to arbitrate her individual claims based on her predispute agreement to do so, undercutting any argument that the State-must-consent rule survived *Viking River*.

## B. Arbitrability of the Non-individual Claims Is an Issue for the Arbitrator

Simplified and Lewis agree that Lewis's individual PAGA claims must be arbitrated. Where disagreement remains is what to do with her non-individual claims. Simplified now argues that *Viking River* requires dismissal because Lewis's obligation to arbitrate her individual claims maroons her non-individual claims in court without a plaintiff. Lewis argues that the *Viking River* discussion supporting dismissal is not binding on us and her obligation to arbitrate her individual claims does not affect her standing to pursue her non-individual claims. In urging that her non-individual claims survive, she declines to concede they must be arbitrated.

We need not decide whether an arbitration agreement *can* require that non-individual PAGA claims be arbitrated because the arbitrator must decide whether the Simplified arbitration agreement calls for such arbitration at all.[8] The Simplified

---

[8] Justice Sotomayor's concurrence in *Viking River, supra,* 142 S.Ct. at pp. 1925–1926, is an example of the school of thought that the viability of non-individual PAGA claims after the

18

arbitration agreement incorporates the Employment Arbitration Rules & Procedures of the American Arbitration Association (AAA). The AAA Rule on "Jurisdiction" provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." This provision clearly leaves to the arbitrator to determine whether the agreement to arbitrate extends to Lewis's non-individual PAGA claims. (See *Nguyen v. Applied Medical Resources Corp.* (2016) 4 Cal.App.5th 232, 245 [arbitrability determined by arbitrator under AAA rules].) We therefore will remand with directions that, when the case is ordered to arbitration, the scope of the claims subject to arbitration be submitted to the arbitrator.

IV. **We Decline to Take Judicial Notice of Simplified's Settlement in the *Shackelford* Action**

In regular briefing, Simplified asserted, without record support, that a settlement it reached in the *Shackelford* Action deprived Lewis of standing to maintain her PAGA action. We requested further briefing on this topic as well as a copy of the settlement on which Simplified based its assertion. The parties complied and we now decline to take judicial notice of the *Shackelford* Action settlement. The parties dispute the facts relevant to its resolution.

---

individual claims are compelled to arbitration is an open question for further exploration by California courts. (See, e.g., *Gavriiloglou v. Prime Healthcare Management, Inc.* (2022) 83 Cal.App.5th 595 [finding arbitration of an individual PAGA claim did not prevent the employee from pursuing non-individual PAGA claims in court, post-*Viking River*].)

Most notably, the parties dispute the date through which the *Shackelford* Action settlement applies to PAGA claims it settled. Lewis contends that it was through October 30, 2020, the date of preliminary approval of the settlement. She offers no citation or explanation for this assertion. Simplified contends that it was through "the date of final approval" of the settlement, which was June 22, 2021. However, this is not apparent from the record citation Simplified offered in support, which states only that "[t]he State of California's claims for civil penalties pursuant to PAGA are also extinguished," without specifying to what PAGA claims this refers. The preceding sentence contains the capitalized term "PAGA Claims" which appears to be undefined. Moreover, the "Released Claims" in the settlement agreement, which include as part of their definition PAGA claims, are limited to those based on "facts that occurred on or before August 10, 2020."

Lewis contends that "[t]he PAGA period in this case is ongoing" but does not explain why. While not necessarily dispositive, we are directed to no evidence concerning whether Lewis still works for Simplified. At least as of the date of her complaint (July 16, 2020), Lewis alleged that she was still employed by Simplified. She further alleged that the harms alleged in her complaint were ongoing. Simplified does not argue Lewis lacked standing as of the date of her complaint or with respect to PAGA claims post-dating the *Shackelford* Action settlement.

Given the state of the record and the underdeveloped arguments on the point, we make no determination of the date through which the *Shackelford* Action PAGA release was effective, but decide only that the parties have failed to

20

demonstrate on the record before us that the facts concerning the settlement are sufficiently certain to be judicially noticed.

We leave determination of the effect of the settlement, if any, to further proceedings on remand.

## DISPOSITION

The order denying Simplified's motion to compel arbitration is reversed and the matter is remanded for further proceedings in accordance with this opinion. Reversal is the result of an intervening change in law. In the interests of justice, the parties shall bear their own costs on appeal.

## CERTIFIED FOR PUBLICATION

HARUTUNIAN, J.[*]

We concur:

STRATTON, P. J.

GRIMES, J.

---

[*]     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.