Filed 5/29/25  Torres v. Merit Aluminum Foundry CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| RALPH FRANCISCO TORRES, | |
| Plaintiff and Respondent, | G064311 |
| v. | (Super. Ct. No. CIVSB 2312543) |
| MERIT ALUMINUM FOUNDRY INC., et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of San Bernardino County, Jessica L. Morgan, Judge. Reversed.

Ogletree, Deakins, Nash, Smoak & Stewart, Ryan H. Crosner and Chigoziri J. Ibechem for Defendants and Appellants.

Aegis Law Firm, Samuel A. Wong, Jessica L. Campbell, and Ali S. Carlsen for Plaintiff and Respondent.

Merit Aluminum Foundry Inc. and Merit Aluminum Inc. (collectively, Defendants) appeal from an order denying their motion to compel arbitration. They argue the trial court erred in finding the Federal Arbitration Act (9 U.S.C. § 1 et seq.; FAA) does not govern the arbitration agreement between them and Ralph Francisco Torres, a former employee of Merit Aluminum Foundry Inc. (Foundry). We agree and reverse.

FACTS

Torres was employed by Foundry from December 2021 to July 2022. Foundry is a subsidiary of Merit Aluminum Inc. (the Parent Company). As a condition of employment, Torres signed a document titled "Mutual Agreement to Arbitrate Claims" (the Agreement).[1]

In June 2023, Torres filed a putative class action complaint against Defendants alleging claims for failure to pay wages, failure to provide meal and rest periods, failure to provide accurate itemized wage statements, failure to pay wages timely during employment and upon separation of employment, and unfair business practices.

A few months later, Torres amended the complaint to add a cause of action for penalties under the Private Attorneys General Act of 2004 (Labor Code, § 2698, et seq.; PAGA).[2] The PAGA claim was based on allegations of unpaid wages, including minimum and overtime wages (§§ 201–204, 210, 510, 1182.12, 1194, 1197–1198), meal and rest break violations (§§ 226.7, 512), failure to provide accurate itemized wage

---

[1] Torres does not deny it's his signature on the Agreement.

[2] All further statutory refences shall be to the Labor Code unless otherwise stated.

statements (§ 226), and failure to maintain accurate and complete records (§§ 1174, 1174.5).

Defendants moved, under the Agreement, to compel arbitration of Torres's individual claims, including his individual PAGA claim, to dismiss his class claims, and to stay his representative (nonindividual) PAGA claim. In opposition, Torres argued the Agreement expressly provides the class and representative waivers are valid only if they are not prohibited by state or federal law. According to Torres, his class and representative claims could proceed in court because the waivers were prohibited by law: California's *Gentry*[3] rule prohibits the class waiver, and California and federal law prohibit a wholesale waiver of PAGA claims. He also argued that because section 229 prohibits the compulsion of wage claims into arbitration, many of his claims would not be covered by the Agreement. In reply, Defendants objected to Torres's evidence and argued his interpretation of the Agreement was incorrect and that section 229 did not apply to his claims.

At the hearing on the motion to compel arbitration, the trial court overruled Defendants' objections and denied the motion "because the FAA was not established that would apply and then preempt to . . . section 229, the preclusion of arbitrating PAGA and the invalidation of class waivers under the Gentry standards, G-e-n-t-r-y, which exist here." We understand this to mean the court found Defendants failed to show the FAA applies to the Agreement, determined California law was not preempted, and denied the motion to compel arbitration based on the *Gentry* rule invalidating certain class waivers, decisional law precluding arbitration of nonindividual PAGA claims, and section 229.

---

[3] *Gentry v. Superior Court* (2007) 42 Cal.4th 443 (*Gentry*).

Defendants timely appealed the order.

## DISCUSSION

### I.

#### STANDARD OF REVIEW

"""""There is no uniform standard of review for evaluating an order denying a motion to compel arbitration."""" (*Hang v. RG Legacy I, LLC* (2023) 88 Cal.App.5th 1243, 1253.) An order based on a decision of fact is reviewed for substantial evidence. (*Ibid.*) One based solely on a decision of law is reviewed de novo. (*Ibid.*) "Where the facts are undisputed, the question of whether the transaction involves interstate commerce so as to implicate the [FAA] is a question of law subject to de novo review." (*Scott v. Yoho* (2016) 248 Cal.App.4th 392, 399.) "As to the trial court's evaluation on whether [the plaintiff] met his burden of establishing the *Gentry* factors, an appellate court reviews the ruling under the deferential abuse of discretion standard." (*Muro v. Cornerstone Staffing Solutions, Inc.* (2018) 20 Cal.App.5th 784, 790 (*Muro*).)

### II.

#### GENERAL PRINCIPLES: CALIFORNIA VERSUS FEDERAL LAW

At its core, the dispute here concerns whether Torres may invoke California substantive law, which the trial court relied on in denying the motion to compel arbitration, to avoid having his claims sent to arbitration. We summarize them briefly here.

First, under what is known as the *Gentry* rule, "certain class action waivers in employment arbitration agreements [, i.e., those that satisfy the *Gentry* factors,] are unenforceable." (*Evenskaas v. California Transit, Inc.* (2022) 81 Cal.App.5th 285, 289.) The *Gentry* rule is valid when

4

an arbitration agreement is governed by California law. (*Muro, supra,* 20 Cal.App.5th at p. 792.)

Second, section 229 provides: "Actions to enforce the provisions of this article for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate."

The FAA, if applicable, preempts both the *Gentry* rule and section 229. (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 366 [*Gentry* rule]; *Performance Team Freight Systems, Inc. v. Aleman* (2015) 241 Cal.App.4th 1233, 1240 [§ 229].)

Third, a PAGA claim has two components: an individual claim and a nonindividual claim. An individual PAGA claim seeks civil penalties based on Labor Code violations sustained by the plaintiff. (*Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1119 (*Adolph*); *Gregg v. Uber Technologies, Inc.* (2023) 89 Cal.App.5th 786, 792.) A nonindividual PAGA claim seeks those penalties for Labor Code violations sustained by other employees. (*Adolph*, at p. 1119; *Gregg*, at p. 792.) An arbitration agreement may mandate arbitration of a plaintiff's individual PAGA claim. (*Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639, 650.) But an employee compelled to arbitrate individual PAGA claims maintains "standing to litigate non-individual claims in court." (*Adolph*, at p. 1123.)

### III.

#### THE FAA GOVERNS THE AGREEMENT

In the proceedings below and on appeal, Defendants argued—and Torres did not dispute—that the Agreement is governed by the FAA. The trial court, however, found Defendants had not shown the FAA applies. Defendants contend this was error. We agree.

Unless the parties agree otherwise, "the FAA 'provides for the enforcement of arbitration provisions in any contract evidencing a transaction involving interstate commerce.'" (*Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal.App.5th 337, 346.) "[E]videncing a transaction involving commerce" (FAA, § 2) means "the 'transaction' in fact 'involv[es]' interstate commerce, even if the parties did not contemplate an interstate commerce connection." (*Allied-Bruce Terminix Companies, Inc. v. Dobson* (1995) 513 U.S. 265, 281.) The term is "the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." (*Citizens Bank v. Alafabco, Inc.* (2003) 539 U.S. 52, 56 (*Citizens Bank*); *Shepard v. Edward Mackay Enterprises, Inc.* (2007) 148 Cal.App.4th 1092, 1097.)

Under this broad interpretation, "application of the FAA [is not] defeated because the individual [transaction], taken alone, did not have a 'substantial effect on interstate commerce.' [Citation.] Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.' [Citations.] Only that general practice need bear on interstate commerce in a substantial way. [Citations.]" (*Citizens Bank, supra,* 539 U.S. at pp. 56–57.)

"The party seeking to enforce the arbitration agreement [ ] bears the burden of establishing the FAA applies and preempts otherwise governing provisions of state law or the parties' agreement." (*Nixon v. AmeriHome Mortgage Co., LLC* (2021) 67 Cal.App.5th 934, 946.) "Any doubts or ambiguities as to the scope of the arbitration clause itself should be

resolved in favor of arbitration." (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 386 (*Cronus Investments, Inc.*).)

At oral argument, Defendants contended they could satisfy the interstate commerce requirement by showing either that their business involved interstate commerce or that Torres's job itself involved interstate commerce. Torres, on the other hand, argued Defendants had to show both. We conclude the burden was something in between these two positions: Defendants had to show that their general business practices "bear on interstate commerce in a substantial way" and that Torres's job responsibilities—even "'without showing any specific effect upon interstate commerce'"—played a role in those general business practices. (*Citizens Bank, supra,* 539 U.S. at pp. 56–57.)

This burden was met here. Foundry offered undisputed evidence it operated an interstate business providing extruding, powder coating, anodizing, and fabricating aluminum extrusion. Essentially, Foundry cuts "billets" of aluminum rolls and sends them to its facilities in California or Mexico. From these facilities, the rolls are further cut and sold to Foundry's customers throughout the United States. The Parent Company provides similar services and sells its products to customers in all fifty states. Torres, according to his own declaration, worked for Foundry as an hourly employee in 12-hour shifts and received bonuses "related to production." This evidence was sufficient to create a reasonable inference that his work played a role in Defendants' interstate activities. His position thus had a sufficient nexus to Foundry's interstate business for the FAA to apply to his claims. (See *Cronus Investments, Inc.*, *supra*, 35 Cal.4th at p. 386 [doubts concerning scope of arbitration resolved in favor of arbitration].)

# IV.

## INTERPRETATION OF THE AGREEMENT

Torres contends that, even if the FAA governs the Agreement, his class and PAGA claims would still proceed in court because the Agreement calls for it. He bases his argument on the following three provisions of the Agreement.

Under the Agreement's first heading, "Disputes Covered by the Agreement" (boldface and underscoring omitted), Torres and Merit Aluminum Corporation[4] agreed to arbitrate "all claims, disputes, or controversies ('Claims'), past, present or future, whether or not arising out of [Torres's] employment (or its termination), that the Company [Merit Aluminum Corporation] may have against [Torres] or that [he] may have against [the Company, its subsidiaries, and others], to the fullest extent permitted by law."

The Agreement's second heading, "Claims Not Covered by the Agreement" (boldface and underscoring omitted; the Carve-Out Provision), provides in relevant part that "any claims, disputes, or controversies that are not arbitrable, as a matter of state or federal law, are not covered by this Agreement.

The Agreement's third heading, "Class Action Waiver" (boldface and underscoring omitted; the Class Waiver Provision) provides: "Any Claim must be brought in [Torres's] or the Company's individual capacity, and not as a plaintiff or class member in any purported class, collective,

---

[4] In support of the motion to compel arbitration, Foundry's human resources manager declared that the Parent Company also does business as "Merit Aluminum Corporation" and that Foundry uses the Parent Company's employee onboarding forms, which include the Agreement.

representative, multi-plaintiff, or similar proceeding ('Class Action'), except as otherwise prohibited by state or federal law. The Company and [Torres] expressly waive any ability to maintain any Class Action in any forum. The arbitrator shall not have authority to combine or aggregate similar claims or conduct any Class Action nor make an award to any person or entity not a party to the arbitration. Any claim that all or part of this Class Action Waiver is unenforceable, unconscionable, void, or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator. In the event that a court of law deems this Class Action Waiver unenforceable and requires that a Claim proceed on a class, collective, representative, or other multi-plaintiff basis, the matter shall proceed in a court of competent jurisdiction, and not before an arbitrator(s)."

Interpreting these provisions, Torres advances the same three arguments on appeal as he did below. First, Torres contends the Class Action Waiver calls for waivers of class and representative actions in any forum "except where prohibited by state or federal law." (Boldface omitted.) The use of the disjunctive "or" means the waiver will not apply if doing so violates either state law or federal law. Because the Class Waiver Provision is invalid under the *Gentry* rule, the class claims must proceed in court. Similarly, because a wholesale PAGA waiver is invalid under both California and federal law, the Class Waiver Provision directs that the representative claims must proceed in court. Second, even if the Class Waiver Provision is enforceable, the Carve-Out Provision makes clear the Agreement doesn't cover "any claims, disputes, or controversies that are not arbitrable, as a matter of state or federal law." Third, because wage claims are not arbitrable under section 229, many of his claims would not be covered by the Agreement.

9

In response, Defendants argue Torres's interpretation of the Agreement is foreclosed by *Saheli v. White Memorial Medical Center* (2018) 21 Cal.App.5th 308 (*Saheli*). For the reasons discussed below, we agree with Defendants.

"Arbitration is strictly a matter of consent." (*Duran v. EmployBridge Holding Co.* (2023) 92 Cal.App.5th 59, 65.) Parties to an arbitration agreement "may freely" decide which disputes will and won't be arbitrated. (*Ibid.*) One party cannot force the other "to arbitrate a dispute that he or she has not agreed to submit to arbitration." (*Ibid.*) "Whether the parties agreed to arbitrate all or a portion of 'the present controversy turns on the language of the arbitration [agreement].'" (*Ibid.*)

"[S]tate contract rules generally govern the construction of arbitration agreements." (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 384.) "'"Under [California's] statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.*, § 1639.) The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" (*id.*, § 1644), controls judicial interpretation. (*Id.*, § 1638.)' [Citations.] A [contract] provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. [Citation.] But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract."'" (*TRB Investments, Inc. v. Fireman's Fund Ins. Co.* (2006) 40 Cal.4th 19, 27.)

In *Saheli*, the plaintiff opposed the defendants' petition to arbitrate her claims, arguing the arbitration agreement was unenforceable with respect to her Ralph Act[5] and Bane Act[6] claims because it failed to comply with certain requirements for arbitration agreements mandated by those acts. (*Saheli*, *supra*, 21 Cal.App.5th at p. 313.) The defendants countered that such requirements were preempted by the FAA. (*Id.* at pp. 315–317.) Disagreeing with the plaintiff, the appellate court concluded "the parties agree[d] not to arbitrate claims that are not arbitrable under 'applicable state . . . law.'" (*Id.* at p. 316.) A provision in the *Saheli* arbitration agreement provided, much like the Carve-Out Provision here, that "'any claim that is non-arbitrable under applicable state or federal law [is] not arbitrable under this [Arbitration Agreement].'" (*Id.* at p. 315.) The appellate court rejected the plaintiff's interpretation of this language to mean "'state law notwithstanding any preemptive effect of federal law.'" (*Id.* at p. 317, fn. omitted.) Rather, the court determined the ordinary meaning of the phrase "applicable state law" as used in the agreement referred only to valid state law, i.e., state law not preempted by federal law. (*Id.* at p. 319, discussing *DIRECTV, Inc. v. Imburgia* (2015) 577 U.S. 47 (*Imburgia*).)

In *Imburgia, supra*, 577 U.S. 47, the agreements provided that if the "'law of your state'" makes waivers of class arbitration unenforceable, the entire arbitration provision is unenforceable. (*Saheli*, *supra*, 21 Cal.App.5th at p. 318.) The United States Supreme Court held that the phrase "law of your state" "unambiguously excluded state law preempted by the FAA, and a contrary interpretation would itself be preempted by the FAA." (*Ibid.*) The

[5] Ralph Civil Rights Act of 1976. (Civ. Code, § 51.7.)

[6] Tom Bane Civil Rights Act. (Civ. Code, § 52.1.)

11

Supreme Court "began by noting that California courts would normally find the phrase to be unambiguous: 'Absent any indication in the contract that this language is meant to refer to *invalid* state law, it presumably takes its ordinary meaning: *valid* state law. . . .' (*Imburgia, supra*, 136 S.Ct. at p. 469.)" (*Saheli*, at p. 319.)

The *Saheli* court "perceive[d] no meaningful difference between the phrases "'law of your state'" [citation] and "'applicable state . . . law'" that would lead [it] to interpret the latter differently than the United States Supreme Court interpreted the former. Like the phrase "'law of your state,'" the phrase 'applicable state . . . law' is not ambiguous and its ordinary meaning refers only to valid state law." (*Saheli, supra*, 21 Cal.App.5th at p. 319.) The court thus "interpret[ed] the phrase 'applicable state . . . law' to encompass only California law that is not preempted by the FAA. ([Civ. Code,] § 1638 [contractual language that is clear and explicit governs].)" (*Id.* at p. 320.)

To distinguish *Saheli*, Torres argues the Carve-Out Provision here is broader because it excludes any state law and is not limited to "applicable" state law, as in *Saheli*. We find that to be a distinction without a difference, precisely for the reasons articulated by *Saheli* in reliance on *Imburgia*. We thus conclude the references to "state law" in the Carve-Out Provision and the Class Waiver Provision do not incorporate state law which is preempted by the FAA—e.g., the *Gentry* rule and section 229.

Finally, although the parties dispute whether California or federal substantive law applies to the Agreement, Torres does not dispute the *resulting effect* on his claims if California law doesn't apply. Stated another way, Torres did not argue below—and does not argue on appeal—that Defendants are not entitled to the relief sought in their motion (i.e.,

12

arbitration of his individual claims, dismissal of the class claims, and a stay of his representative, or nonindividual, PAGA claim) if federal substantive law applies. We take this as a tacit concession by Torres that Defendants are entitled to the relief requested if in fact California law does not apply to the Agreement.

For these reasons, the order denying Defendants' motion is reversed.

## DISPOSITION

The order denying Defendants' motion to compel arbitration is reversed. The trial court is directed to grant the motion to compel arbitration of Torres's individual claims, including his individual PAGA claim, to dismiss his class claims, and to stay his representative (nonindividual) PAGA claim and further court proceedings. Defendants shall recover costs on appeal.


DELANEY, J.

WE CONCUR:


SANCHEZ, ACTING P. J.


GOODING, J.

14